THE STATE OF OHIO, APPELLEE, *v.* ROBERTS, APPELLANT.

[Cite as *State v. Roberts*, 137 Ohio St.3d 230, 2013-Ohio-4580.]

*Criminal law—Aggravated murder—Allocution—Death penalty vacated and resentencing ordered.*

[No. 2007-2288—Submitted May 7, 2013—Decided October 22, 2013.]

APPEAL from the Court of Common Pleas of Trumbull County,

No. 01-CR-793.

_____

**O'CONNOR, C.J.**

{¶ 1} This is a death-penalty direct appeal as of right. A jury convicted appellant, Donna Roberts, of the aggravated murder of her former husband, Robert Fingerhut, with one death specification. The jury recommended that Roberts be sentenced to death. The trial court accepted that recommendation and sentenced her to death. However, on appeal we vacated the death sentence and remanded to the trial court for resentencing. On remand, the trial court again sentenced Roberts to death. For the following reasons, we are again compelled to vacate Roberts's sentence of death and to remand this case for resentencing.

Facts

{¶ 2} Our previous decision in this case sets forth the facts in detail. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 1-86 ("*Roberts I*"). For purposes of this opinion, we summarize the facts as follows.

{¶ 3} Roberts lived with Robert Fingerhut, her former husband, in Howland Township, Trumbull County. Fingerhut, who operated Greyhound bus terminals in Warren and Youngstown, owned two insurance policies on his life, both of which named Roberts as sole beneficiary. The total benefit of the two policies was $550,000.

**{¶ 4}** At some point, Roberts began an affair with Nathaniel Jackson.[1] In 2001, the affair was interrupted by Jackson's confinement in the Lorain Correctional Institution.

**{¶ 5}** While Jackson was in prison, he and Roberts exchanged numerous letters and spoke on the telephone. Prison authorities recorded 18 of their telephone conversations.

**{¶ 6}** Passages from the Roberts-Jackson correspondence and the recorded phone conversations indicated a plot between the two to murder Fingerhut. Jackson repeatedly pledged to kill Fingerhut upon Jackson's release from prison. In one letter, Roberts complained about Fingerhut's maintaining control of her finances and urged Jackson to "[d]o whatever you want to him ASAP." At Jackson's request, Roberts purchased a ski mask and a pair of gloves for Jackson to use during the murder.

**{¶ 7}** Jackson was released from prison on December 9, 2001. Roberts drove to Lorain to pick him up, spent that night with him in a motel, and spent much of the next two days with him as well. On December 11, 2001, Fingerhut was shot to death at home.

### Indictment, Trial, and Verdict

**{¶ 8}** Roberts was indicted on two counts of aggravated murder, in violation of R.C. 2903.01(A) (prior calculation and design) and (B) (felony murder). Both counts carried two death specifications under R.C. 2929.04(A)(7): one charging murder during an aggravated burglary and one charging murder during an aggravated robbery. The indictment also charged aggravated burglary, R.C. 2911.11, with a firearm specification, R.C. 2941.145, and aggravated robbery, R.C. 2911.01, also with a firearm specification. The jury found Roberts guilty of all counts and specifications. After trial, the

---

1. Jackson was also convicted of murdering Fingerhut and sentenced to death. *State v. Jackson*, 107 Ohio St.3d 300, 2006-Ohio-1, 839 N.E.2d 362.

state elected to proceed on Count One (prior calculation and design) for sentencing purposes, and the trial court dismissed Count Two (felony murder) and its specifications.

### Sentencing

{¶ 9} Before the mitigation hearing, Roberts informed her counsel that she did not wish to present any mitigating evidence except an unsworn statement. After a hearing pursuant to *State v. Ashworth*, 85 Ohio St.3d 56, 706 N.E.2d 1231 (1999), paragraph one of the syllabus, the trial judge determined that Roberts was competent to make that decision.

{¶ 10} At the mitigation hearing, Roberts exercised her right under R.C. 2929.03(D)(1) to make an unsworn statement to the jury. She elected to present no other evidence. In compliance with Roberts's instructions, defense counsel waived opening statement and closing argument. The jury recommended a death sentence, and the trial court sentenced Roberts to death.

### Previous Appeal

{¶ 11} On direct appeal, we affirmed Roberts's convictions of aggravated murder and both death specifications. We also overruled a proposition of law in which Roberts attacked the validity of her waiver of mitigation. However, we vacated the death sentence and remanded the case to the trial court for resentencing because the trial judge had improperly allowed the prosecutor to participate in drafting the sentencing opinion and in doing so, had engaged in ex parte communications with the prosecutor. *Roberts I*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, at ¶ 153-164. We directed the trial court "to afford Roberts her right to allocute," to "personally review and evaluate the evidence [and] weigh the aggravating circumstances against any relevant mitigating evidence," and to "determine anew the appropriateness of the death penalty." We further instructed the trial court to "personally prepare an entirely new

penalty opinion * * * and conduct whatever other proceedings are required by law and consistent with this opinion." *Id.* at ¶ 167.

### Sentencing Proceedings on Remand

**{¶ 12}** On remand, the defense filed a motion to allow Roberts to fully present mitigation at the sentencing rehearing. The trial court denied the motion. However, Roberts proffered her evidence into the record. This consisted of her prison records, a Social Security disability claim file documenting Roberts's head injury after a 1999 motor-vehicle accident, an affidavit by a psychologist giving his preliminary opinion that Roberts suffered from Bipolar Type II Disorder (manic-depressive illness), and a letter about Roberts from her son.

**{¶ 13}** At a hearing on October 22, 2007, the trial court heard Roberts's allocution. One week later, after asking Roberts if she had anything further to say, and after hearing argument from defense counsel, the trial court sentenced Roberts to death and filed its sentencing opinion pursuant to R.C. 2929.03(F).

**{¶ 14}** Roberts presents seven propositions of law for our consideration. Her second proposition of law, which claims that the trial court failed to consider her allocution in sentencing her to death, has merit. Accordingly, we sustain it, and we remand this case to the trial court for consideration of Roberts's allocution when weighing the aggravating circumstances and the mitigating factors.

### I. Exclusion of Mitigating Evidence on Limited Remand

**{¶ 15}** In her first proposition of law, Roberts contends that the trial court erred by precluding her from presenting mitigating evidence on remand.

**{¶ 16}** Before the resentencing hearing, Roberts filed a motion to allow her to present mitigation at the resentencing hearing. In her motion, Roberts argued that she was entitled to "fully develop her mitigation for the evaluation of [the trial court] at her sentencing re-hearing." The trial court denied the motion.

4

**{¶ 17}** After the motion was denied, the defense proffered the following four items, which would have been adduced in mitigation had the trial court granted the motion:

**{¶ 18}** (1) Roberts's prison records, which document her bipolar disorder, depression, and an incident of hallucination during her time in prison.

**{¶ 19}** (2) A file documenting a Social Security disability claim that Roberts had filed after being injured in a 1999 motor-vehicle accident. This file also contains a diagnosis that Roberts suffered from a bipolar disorder.

**{¶ 20}** (3) An affidavit by James Eisenberg, Ph.D., a psychologist, who had reviewed Roberts's records and formed a preliminary opinion that Roberts suffered from Bipolar Type II Disorder, also known as manic-depressive illness, probably beginning in childhood. According to Dr. Eisenberg, this disorder "causes unusual shifts in a person's mood, energy, and ability to function." Its symptoms include poor judgment; aggressive behavior; extreme irritability; inappropriate, intense, or uncontrolled anger; and "frantic efforts to avoid abandonment, either real or imagined."

**{¶ 21}** (4) A letter from Michael Raymond, Roberts's son, extolling his mother's character, setting forth some of the history of her life before the murder, and pleading that her life be spared.

**{¶ 22}** Roberts contends that the trial court's refusal to consider this proffered evidence before resentencing her violated the Eighth Amendment.

### A. Roberts's Eighth Amendment Claim

**{¶ 23}** It is a well-established tenet of Eighth Amendment jurisprudence that the sentencer in a capital case may "not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." (Emphasis sic.) *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion). Moreover, "[j]ust as the State

may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, *as a matter of law*, any relevant mitigating evidence." (Emphasis sic.) *Eddings v. Oklahoma*, 455 U.S. 104, 113-114, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). *See also Hitchcock v. Dugger*, 481 U.S. 393, 398-399, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987).

{¶ 24} In *Skipper v. South Carolina*, 476 U.S. 1, 4-5, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), the court held that a capital defendant had an Eighth Amendment right to introduce, at his sentencing hearing, "testimony * * * regarding his good behavior during the over seven months he spent in jail awaiting trial." Such evidence was "relevant evidence in mitigation" because

> the jury could have drawn favorable inferences from this testimony regarding petitioner's character and his probable future conduct if sentenced to life in prison. * * * [T]here is no question but that such inferences would be "mitigating" in the sense that they might serve "as a basis for a sentence less than death." * * * [E]vidence that the defendant would not pose a danger if spared (but incarcerated) must be considered potentially mitigating. Under *Eddings,* such evidence may not be excluded from the sentencer's consideration.

*Id.* at 4-5, quoting *Lockett* at 604.

{¶ 25} Roberts contends that the trial court committed constitutional error by denying her motion to allow full presentation of mitigation at the resentencing, because the Eighth Amendment—as interpreted in *Lockett*, *Eddings*, and *Skipper*—entitled her to introduce mitigating evidence before the trial judge on remand.

6

**{¶ 26}** We rejected a similar claim in *State v. Davis*, 63 Ohio St.3d 44, 584 N.E.2d 1192 (1992) ("*Davis II*"). Davis had been tried to a three-judge panel and sentenced to death in 1984. *State v. Davis*, 38 Ohio St.3d 361, 528 N.E.2d 925 (1988) ("*Davis I*"). On Davis's initial appeal, we "affirmed [his] conviction, but * * * reversed [his] death sentence based upon errors which occurred after all available mitigating evidence had been heard in the penalty phase of [his] trial." *Davis II* at 44. We then remanded the case to the original three-judge panel for a resentencing hearing. *Id*.

**{¶ 27}** At the hearing on remand, the trial court did not permit Davis to introduce evidence concerning his adjustment to prison life after his conviction and sentencing. Nor was Davis permitted to present expert testimony providing a " 'psychological update' " covering the period since his conviction and sentencing. *Id*. Instead, the panel "limit[ed] its consideration to the evidence presented in mitigation at appellant's 1984 trial" and reimposed the death sentence on Davis. *Id*. at 44-45.

**{¶ 28}** We affirmed, rejecting Davis's argument that *Lockett*, *Eddings*, *Skipper*, and *Hitchcock* entitled him to a new sentencing hearing. We distinguished *Skipper* by noting that it involved the erroneous exclusion of "evidence of Skipper's good prison record *between his arrest and trial*." (Emphasis sic.) *Id.* at 46. In contrast,

> no relevant mitigating evidence was excluded from consideration
> by the panel during the mitigation phase of appellant's 1984 trial.
> All mitigating evidence which was available at that time was duly
> received and considered by the panel including appellant's ability
> to adjust to prison life. That same relevant evidence was again
> received and considered by the panel in 1989 for purposes of
> resentencing appellant. The evidence excluded from consideration

> \* \* \* at appellant's resentencing hearing concerned certain *post-trial* matters.

(Emphasis sic.) *Id.*

{¶ 29} We considered the same issue in *State v. Chinn*, 85 Ohio St.3d 548, 709 N.E.2d 1166 (1999). In *Chinn*, the defendant was sentenced to death after a jury trial. The court of appeals determined, however, that the trial judge had committed errors in performing his functions under R.C. 2929.03(D)(3) and (F)—i.e., in his independent evaluation of the sentence and in writing the sentencing opinion. The court of appeals affirmed the trial court's judgment as to all other issues.

{¶ 30} Like the appellant in *Davis*, Chinn argued that *Lockett*, *Skipper*, and *Hitchcock* entitled him to present new mitigating evidence on remand. We again rejected that argument:

> [E]ach of those cases involved a situation where the capital sentencer was prohibited, in some form or another, from considering relevant mitigating evidence at trial. \* \* \* [N]o relevant mitigating evidence was ever excluded from consideration during the penalty phase of [Chinn's] 1989 trial. Therefore, the case at bar is clearly distinguishable from \* \* \* *Lockett, Skipper,* and *Hitchcock*. Accordingly, as was the case in *State v. Davis* (1992), 63 Ohio St.3d 44, 46, 584 N.E.2d 1192, 1194-1195, we find *Lockett, Skipper,* and *Hitchcock* to be inapplicable here. It is of no consequence that the additional mitigating evidence in *Davis* involved *post-trial* accomplishments, whereas appellant's additional mitigation evidence involves matters appellant claims he could have presented but did not present during the mitigation

> phase of his 1989 trial. In this case, as in *Davis,* the errors requiring resentencing occurred after the close of the mitigation phase of the trial. Under these circumstances, the trial court is to proceed on remand from the point at which the error occurred.

*Chinn* at 564-565.

{¶ 31} Since our decision in *Chinn*, the United States Court of Appeals for the Sixth Circuit has addressed this issue in habeas corpus proceedings involving the *Davis* case. In *Davis v. Coyle*, 475 F.3d 761 (6th Cir.2007), the Sixth Circuit held that the three-judge panel's decision to exclude posttrial mitigation evidence from Davis's resentencing hearing violated his Eighth Amendment rights and that our affirmance of that ruling in *Davis II*, "based on the court's belief that the facts of Davis's case could be distinguished from *Skipper*'s solely on the basis of timing, was both an unreasonable application of the decision in *Skipper* and contrary to the holding in that opinion and its antecedent cases." *Id.* at 773.

{¶ 32} *Coyle* states that "the holding in *Skipper* that a defendant 'be permitted to present any and all relevant mitigating evidence that is available' * * * requires that, at resentencing, a trial court must consider any new evidence that the defendant has developed since the initial sentencing hearing." *Id.* at 774, quoting *Skipper*, 476 U.S. at 8, 106 S.Ct. 1669, 90 L.Ed.2d 1. *Accord Creech v. Arave*, 947 F.2d 873, 881-882 (9th Cir.1991) (en banc); *Sivak v. State*, 112 Idaho 197, 199-203, 731 P.2d 192 (1986). *See also Spaziano v. Singletary*, 36 F.3d 1028, 1032-1035 (11th Cir.1994) (assuming, without discussion, that *Lockett* requires a trial court to allow new evidence on remand); *State v. Tison*, 160 Ariz. 501, 502, 774 P.2d 805 (1989) (case remanded for resentencing; remand order specified, without discussion, that "[e]ither party may offer additional evidence of aggravation or mitigation applicable in each case as of the time of the hearing").

{¶ 33} As the state points out, we are "not bound by rulings on federal statutory or constitutional law made by a federal court other than the United States Supreme Court." *State v. Burnett*, 93 Ohio St.3d 419, 424, 755 N.E.2d 857 (2001). Hence, we are not obliged to follow *Coyle*. We are, however, free to consider whether *Coyle* is persuasive and whether it is on point in this case.

{¶ 34} We begin by noting, as we did in *Davis II* and *Chinn*, that *Lockett*, *Eddings*, *Skipper*, and *Hitchcock* are all distinguishable from this case. Each case in the *Lockett-Eddings-Skipper-Hitchcock* tetralogy involved the trial court's exclusion of, or refusal to consider, evidence in the original sentencing proceeding. None of these cases involved a proceeding on remand. This case, like *Davis II* and *Chinn*, involves a proceeding on remand for the limited purpose of correcting an error that occurred *after* the defendant had had a full, unlimited opportunity to present mitigating evidence to the sentencer.

{¶ 35} In other words, neither *Lockett* nor any of its progeny required the trial court to reopen the evidence after an error-free evidentiary hearing had already taken place. *See Chinn*, 85 Ohio St.3d at 564-565, 709 N.E.2d 1166. "[T]he issue in this case is whether the presentation of evidence of mitigating * * * factors must be reopened when a death sentence is reversed for a reason unrelated to the presentation of evidence. None of the Supreme Court cases cited by the majority supports that premise." *Coyle*, 475 F.3d at 782 (Gibbons, J., concurring).

{¶ 36} In a case in which the defendant was not deprived of any constitutional right—including her Eighth Amendment right to present mitigation—at the time of her mitigation hearing, there seems to be no basis for requiring the trial court to reopen or supplement that evidence in a later proceeding. To hold, as *Coyle* does, that a new mitigation hearing must be held, even though no constitutional error infected the original one, would transform the

10

right to present relevant mitigation into a right to *update* one's mitigation. Such a right has no clear basis in *Lockett* or its progeny.

{¶ 37} Establishing a right to update mitigation could result in arbitrary distinctions between similarly situated capital defendants. A defendant who had an error-free mitigation hearing could not update his mitigation—no matter how compelling the new mitigation that might be available to him—if the trial judge committed no error *after* the mitigation hearing that called for the case to be remanded. But another defendant, whose mitigation hearing was equally free of error, *would* have the right to update his mitigation in the event that a posthearing sentencing error took place that required a remand.

{¶ 38} Furthermore, as we noted in *Davis II*, the right to update mitigation would imply that a capital defendant appealing his death sentence would have a right to present new mitigation to the appellate court. *Davis II*, 63 Ohio St.3d at 46, 584 N.E.2d 1192, fn.2. Under R.C. 2929.05(A), this court (and, in pre-1995 cases, the court of appeals) has the obligation to independently review the death sentence.[2] Hence, a reviewing court could be considered a "sentencer" for *Lockett* purposes.

---

2.     The court of appeals and the supreme court shall review the judgment in the case and the sentence of death imposed by the court or panel of three judges in the same manner that they review other criminal cases, except that they shall review *and independently weigh* all of the facts and other evidence disclosed in the record in the case and consider the offense and the offender to determine whether the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors in the case, and whether the sentence of death is appropriate. * * * The court of appeals, in a case in which a sentence of death was imposed for an offense committed before January 1, 1995, or the supreme court shall affirm a sentence of death *only if the particular court is persuaded from the record* that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors present in the case and that the sentence of death is the appropriate sentence in the case.

(Emphasis added.) R.C. 2929.05(A).

{¶ 39} For the foregoing reasons, we adhere to our precedent in *Davis II* and *Chinn*. Accordingly, we reject Roberts's claim that the Eighth Amendment required the trial court to admit Roberts's proffered mitigation.

B. The Trial Court's Compliance with the Remand Order in *Roberts I*

{¶ 40} Having rejected Roberts's Eighth Amendment claim, we will briefly consider certain points not argued by Roberts, but set forth in the concurring and dissenting opinion.

{¶ 41} The concurring and dissenting opinion asserts that by refusing to admit Roberts's proffered mitigation evidence, the trial court failed to comply with the instructions we issued in *Roberts I* when we remanded this case to the trial court for the first time.[3] *Id.* at ¶ 99. The concurring and dissenting opinion interprets *Roberts I* as *ordering* the trial court to hold a new mitigation hearing and to permit Roberts to introduce mitigating evidence.

{¶ 42} *Roberts I* did no such thing. In *Roberts I*, we instructed the trial court as follows:

> On remand, the trial judge will afford Roberts her right to allocute, and the trial court shall personally review and evaluate the evidence, weigh the aggravating circumstances against any relevant mitigating evidence, and determine anew the appropriateness of the death penalty as required by R.C. 2929.03. The trial court will then personally prepare an entirely new penalty opinion as required by R.C. 2929.03(F) and conduct whatever other proceedings are required by law and consistent with this opinion.

---

3. Roberts asserts that our order in *Roberts I* did not *prohibit* the admission of new mitigating evidence on remand, but she does not contend that the order actually *required* the trial court to admit such evidence.

110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 167.

{¶ 43} The above order says nothing about holding a new evidentiary hearing. Nor is a requirement to hold a new evidentiary hearing implicit in our instructing the trial court to "weigh the aggravating circumstances against any relevant mitigating evidence" and "determine anew the appropriateness of the death penalty." Relevant mitigating evidence may be found in the guilt phase, as well as in the penalty phase. Indeed, R.C. 2929.03(D)(1) *requires* the trial court to consider "any evidence raised at trial" that is relevant "to any factors in mitigation of the imposition of the sentence of death."[4]

{¶ 44} Moreover, the remand order in *Roberts I* must be read against the backdrop of our precedents in *Davis II* and *Chinn*. In *Davis II*, a death sentence had been reversed, and the case remanded for resentencing, because of errors that occurred after mitigating evidence had been heard in the penalty phase. On appeal from remand, we rejected the claim that the trial court had erred by limiting its consideration to the evidence presented in the original mitigation hearing. *Davis II*, 63 Ohio St.3d at 45-46, 584 N.E.2d 1192.

{¶ 45} In *Chinn*, we adhered to *Davis II* and held that when "errors requiring resentencing occurred after the close of the mitigation phase," the correct procedure was for the trial court "to proceed on remand from the point at which the error occurred." *Chinn*, 85 Ohio St.3d at 565, 709 N.E.2d 1166. Indeed, we stated that "the trial court was *required* to proceed on remand from the

---

4. We have repeatedly recognized that the sentencer may glean relevant mitigating evidence from the guilt phase. *See, e.g., State v. Jordan*, 101 Ohio St.3d 216, 2004-Ohio-783, 804 N.E.2d 1, ¶ 80 (quoting R.C. 2929.03(D)(1)); *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 208 ("much of the trial-phase evidence was relevant to * * * the nature and circumstances of the offense, and the mitigating factors"); *State v. Barton*, 108 Ohio St.3d 402, 2006-Ohio-1324, 844 N.E.2d 307, ¶ 49 (capital defendant elicited mitigating testimony on cross-examination of prosecution witnesses during the guilt phase of the trial).

point at which the errors had occurred, i.e., after the jury had returned its recommendation of death." (Emphasis added.) *Id.* at 564.

{¶ 46} The trial court was bound by those precedents, as well as by our remand order in *Roberts I. Roberts I* neither overruled nor modified *Davis II* or *Chinn* and did not order the trial court to hold a new penalty-phase evidentiary hearing. Thus, *Roberts I* cannot reasonably be understood as imposing a requirement that *Davis II* and *Chinn* had expressly declined to impose.

{¶ 47} The concurring and dissenting opinion also points out that Roberts "proffered four items in mitigation, only one of which dealt with her conduct in prison." *Id.* at ¶ 99. While this is true, it lends no support to the claim that she should have been allowed a fresh opportunity to submit mitigating evidence on remand.

{¶ 48} As we stated in *Chinn,* "[i]t is of no consequence that the additional mitigating evidence in *Davis* involved *post-trial* accomplishments, whereas appellant's additional mitigation evidence involves matters appellant claims he could have presented but did not present during the mitigation phase of his 1989 trial." (Emphasis sic.) *Chinn*, 85 Ohio St.3d at 564-565, 709 N.E.2d 1166. In *neither* case is a capital defendant entitled to present such evidence on remand when "the errors requiring resentencing occurred after the close of the mitigation phase of the trial." *Id*. at 565.

{¶ 49} Additionally, mitigation evidence pertaining to events that took place before trial could have been presented to the trial court during Roberts's original mitigation hearing in 2003. Instead of doing so at that time, Roberts expressly and validly waived her right to present mitigation.[5] Thus, the case for

---

5. In *Roberts I*, we considered and rejected Roberts's claim that the waiver was invalid, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, at ¶ 132-145, and her claim that she did not receive effective assistance of counsel in connection with the waiver, *id*. at ¶ 146-148.

admitting proffered mitigation involving events that took place before trial is, if anything, weaker than the case for admitting posttrial prison records.

{¶ 50} For all of the foregoing reasons, we overrule Roberts's first proposition of law.

## II. The Trial Court's Failure to Consider Roberts's Allocution

{¶ 51} In her second proposition of law, Roberts contends that the trial court failed to consider her allocution in determining the sentence.

{¶ 52} Pursuant to our mandate, the trial judge invited Roberts to make a statement in allocution at the hearing on October 22, 2007, and Roberts did. One week later, on October 29, the trial court imposed sentence and filed its sentencing opinion. Before imposing sentence, the trial court heard a brief statement from Roberts's counsel and asked Roberts if she had anything further to say. The trial court then stated that it had considered the record and the oral statements. The sentencing opinion notes that the trial court had been instructed to provide Roberts with the right of allocution before reimposing a sentence. Beyond this, however, the opinion does not discuss Roberts's allocution.

{¶ 53} Roberts contends that the trial court's failure to discuss the allocution in its opinion shows that the trial court failed to consider her allocution. This alleged failure, Roberts claims, violated the Eighth Amendment's requirement that the sentencer in a capital case consider all relevant mitigation. *See Eddings*, 455 U.S. at 113-114, 102 S.Ct. 869, 71 L.Ed.2d 1.

{¶ 54} We have previously rejected claims that a trial court's failure to *mention* particular mitigating factors in a sentencing opinion obliges a reviewing court to infer that the trial court failed to *consider* those factors. "Appellant erroneously assumes that evidence that is not specifically mentioned in an opinion was not considered. While a sentencing court must consider all evidence of mitigation, it need not discuss each [allegedly mitigating] factor individually."

15

*State v. Phillips*, 74 Ohio St.3d 72, 102, 656 N.E.2d 643 (1995), citing *Parker v. Dugger*, 498 U.S. 308, 314-315, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991).

{¶ 55} Nevertheless, we conclude that the particular circumstances of this case warrant the inference that the trial judge did, in fact, fail to consider Roberts's allocution in sentencing her to death.

{¶ 56} To begin with, Roberts's allocution was the *only* relevant matter that was specifically placed before the trial court as mitigation. At her original mitigation hearing in 2003, Roberts had elected to present no evidence. Although she had given an unsworn statement before the jury, that statement contained no mitigation; indeed, Roberts had used it to insist that a sentence of death be imposed upon her. *See Roberts I*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 137 and 148. And although Roberts tried to present mitigating evidence during the proceedings on remand, that attempt was (properly, as we hold today) overruled by the trial court. The trial court did find one mitigating factor in the guilt-phase record.[6] But this merely underscores the fact that *nothing* was placed before the trial court for the specific purpose of mitigating the sentence—except Roberts's statement in allocution.

{¶ 57} And this statement contained much information whose relevance as mitigation was clear. For instance, Roberts stated that she grew up in a "very very abusive" household, in which her father abused her mother physically and verbally and in which "guns came out" at times during household disputes. Roberts claimed that when she was very young, her cousin raped her. Roberts also said that she "always felt empty" because she never received any attention or affection.

---

6. The trial court found, in Roberts's letters to Jackson, indications that Fingerhut "may have been physically abusive to her," which the court considered relevant to the mitigating factors listed in R.C. 2929.04(B)(1) (victim-induced or facilitated offense) and (2) (duress, coercion, or strong provocation). The trial court gave this factor "very slight weight."

{¶ 58} Roberts recounted a long history of motor-vehicle accidents and resulting injuries, including injuries to her head, that she claimed affected her mental health. In 1963, 1983, and 1999, Roberts said, she was involved in accidents serious enough to put her in the hospital. After the 1963 accident, she said, she was "spacey for awhile." In the 1983 collision, she was thrown through a windshield. She went to a neurosurgeon for many months after that accident.

{¶ 59} In 1999, Roberts was involved in an accident that demolished her car. Roberts remembered being in the hospital, but after that she could not remember anything "for a long time." Roberts said that Fingerhut "was really worried" about her because she was acting "spacey" and "goofy." After this last accident, Roberts stated, she suffered from depression. She attempted suicide and was hospitalized in a psychiatric ward. She suffered from auditory hallucinations that were successfully treated with Risperdal.[7]

{¶ 60} After the suicide attempt, Roberts began falling down repeatedly, hitting her head, and losing track of what day it was. Eventually, Roberts said, Fingerhut made her "go to Social Security," and she was sent to a psychiatrist.

{¶ 61} In her allocution, Roberts also cited examples of her selflessness and contributions to society. Roberts worked "almost 23 years" in a plastic surgeon's office and "helped a lot of people" during that time. She also volunteered to go to Israel, along with her employer, to treat wounded soldiers. She recounted how, after her conversion to Judaism, she had raised funds to rescue a person from Ethiopia who was in danger of being murdered for his religious beliefs. She said that when she ran the restaurant in the bus terminal, she gave food and money to people who were short of money at the end of the month. She also gave several thousand dollars to help her sisters and her son.

---

7. According to Roberts, when she went to prison and stopped taking Risperdal, she hallucinated "giant anthills."

**{¶ 62}** *Lockett* explains that the category of relevant mitigating factors includes "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." 438 U.S. at 604, 98 S.Ct. 2954, 57 L.Ed.2d 973. A court may "exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense." *Id.* at 605, fn. 12. *See also Brown v. Payton*, 544 U.S. 133, 149-150, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005) (Souter, J., dissenting) ("it was settled law that a capital defendant has a plenary right to present evidence going to any aspect of [the defendant's] character, background, or record * * * that might justify a sentence less than death"); *Skipper v. South Carolina*, 476 U.S. 1, 4, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986). The information contained in Roberts's allocution was clearly relevant under this definition.

**{¶ 63}** We note, too, that our opinion in *Roberts I* specifically called the matter of allocution to the attention of the trial judge. When we remanded this case to the trial court, we did so with the following instruction: "The trial court shall provide Roberts with her right of allocution before imposing any new sentence."[8] *Roberts I*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 166.

**{¶ 64}** When we consider the presence of relevant and potentially significant mitigation in Roberts's allocution, the utter lack of anything else offered for the specific purpose of mitigation, and our order specifically calling the matter of allocution to the trial judge's attention, we can hardly conclude that the trial court's failure to mention the allocution in its sentencing opinion was a mere oversight. Given these unusual circumstances, we are justified in drawing

---

8. In the original appeal, Roberts alleged that she had not been asked whether she wished to make a statement in allocution and that this omission violated Crim.R. 11. Because we had vacated Roberts's original death sentence on other grounds, we held her allocution claim moot. *Roberts I* at ¶ 165-166.

the inference that when the trial judge weighed the aggravating circumstances against the mitigating factors, he did not consider Roberts's allocution.[9]

**{¶ 65}** This failure violated the Eighth Amendment. Unquestionably, the allocution contained information relevant to mitigation. That information (unlike the evidence discussed in relation to Roberts's first proposition of law) was properly before the court. The court could not, therefore, refuse to consider it.[10] "The sentencer * * * may determine the weight to be given relevant mitigating evidence. But [it] may not give it no weight by excluding such evidence from [its] consideration." *Eddings*, 455 U.S. at 114-115, 102 S.Ct. 869, 71 L.Ed.2d 1.

**{¶ 66}** Our decisions have acknowledged the importance of allocution in capital cases. In *State v. Campbell*, 90 Ohio St.3d 320, 323-326, 738 N.E.2d 1178 (2000), and *State v. Green*, 90 Ohio St.3d 352, 358-360, 738 N.E.2d 1208 (2000), we remanded capital cases for resentencing because the trial courts had failed to comply with Crim.R. 32(A)(1). "Trial courts must painstakingly adhere to Crim.R. 32, guaranteeing the right of allocution. A Crim.R. 32 inquiry is much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse." *Green* at 359-360. In a capital case, the denial of allocution can undermine the "constitutional reliability" of a death sentence. *Id.* at 360.

**{¶ 67}** We recognize, as the dissent notes at ¶ 114, that the allocution under Crim.R. 32(A)(1) is unsworn and thus may not technically amount to evidence. *See* Evid.R. 603 (witness testimony must be preceded by oath or

---

9. The dissent suggests that drawing this inference is inconsistent with *Phillips*. Dissenting opinion at ¶ 112-113 and 115-116. As we discussed above, *Phillips* states a general rule. But this case presents exceptional circumstances, which the dissent does not take into account, that justify a narrow exception to the general rule.

10. The dissent's contention that there is no constitutional right to allocution, dissenting opinion at ¶ 104, is beside the point. Once a capital defendant has used her state-law right of allocution to place constitutionally relevant mitigating factors before the sentencer, the Eighth Amendment does not permit the sentencer to disregard that mitigation.

affirmation). However, the dissent concludes that the information contained therein is therefore not relevant to weighing the aggravating circumstances against the mitigating factors. Dissenting opinion at ¶ 110 and 116. This conclusion is incorrect. In the context of capital sentencing, as *Lockett* makes plain, relevant information has to do with content, not form. We do not believe that a sentencer is licensed to ignore constitutionally relevant mitigating factors brought before the sentencer in accordance with state law, simply because they come labeled "allocution" instead of "evidence."[11]

{¶ 68} *People v. Davis*, 794 P.2d 159 (Colo.1990), exemplifies this point. In *Davis*, the trial court had instructed the jury that the defendant's penalty-phase unsworn statement[12] was not evidence. The Colorado Supreme Court recognized that this was "technically correct" because the statement, which was unsworn, was not evidence under Colorado law. However,

> in the sentencing phase of a capital case, the jury is not limited to consideration of matters technically defined as evidence. In making the profoundly moral decision of whether to impose a sentence of death, it must consider all the facts and circumstances of the crime, the defendant's background and character and any mitigating factors raised by the defendant.

---

11. The dissent states that we have "confuse[d] allocution—which is not evidence—with the opportunity to present an unsworn statement in the penalty phase of the trial and the right to present mitigating evidence to the jurors or fact-finders." Dissenting opinion at ¶ 114. We have not. We simply disagree with the dissent's conclusion that because an allocution is unsworn, it is irrelevant to sentencing. Indeed, if that were so, there would have been no reason to remand in *Campbell* and *Green*.

12. *Davis* called the defendant's penalty-phase statement an "allocution," consistent with Colorado precedent deriving the right to make an unsworn statement to the jury in a capital case from the right to allocution provided in Colorado's version of Crim.R. 32. *See* 794 P.2d at 191, citing *People v. Borrego*, 774 P.2d 854, 856 (Colo.1989).

*Id*. at 192. The court then proceeded to evaluate the likelihood that a reasonable juror would interpret the trial court's instructions to prevent consideration of the defendant's statement. *Id*. at 192-193. Even though the defendant's unsworn statement lacked the status of evidence under Colorado evidentiary law, *Davis* regarded that statement as "constitutionally relevant evidence" for Eighth Amendment purposes:

> [O]ur examination of the instructions as a whole, as well as the context of the sentencing hearing, leads us to conclude that there is not a "reasonable likelihood" that the jury applied instructions No. 1 and No. 4 in a manner preventing it from considering constitutionally relevant evidence. On the contrary, reasonable jurors would have properly understood that they should consider fully the statement offered by the defendant in allocution.

(Footnote omitted.) 794 P.2d at 193. We cannot, therefore, agree with the dissent's contention that "[b]ecause the allocution offered by Roberts prior to the imposition of sentence is not evidence, it has no significance in establishing any mitigating factor." Dissenting opinion at ¶ 116.

{¶ 69} For the foregoing reasons, we conclude that the trial court failed to consider Roberts's allocution and that this error violated the Eighth Amendment. That leaves us with the question of how to remedy the error. In *Phillips*, we stated: "[E]ven if 'the trial court in this case should have more explicitly analyzed the mitigating evidence,' this court's independent reweighing will rectify the error." 74 Ohio St.3d at 102, 656 N.E.2d 643, quoting *State v. Lott*, 51 Ohio St.3d 160, 171, 555 N.E.2d 293 (1990).

{¶ 70} In *State v. Maurer*, 15 Ohio St.3d 239, 473 N.E.2d 768 (1984), we used independent review to rectify a trial court's failure to enunciate its reasoning.

There, we observed that the very purpose of an independent appellate review of death sentences is, "at least in part, to correct such omissions." *Id*. at 247.

{¶ 71} However, we also cautioned:

> In so holding, we do not intend to trivialize the duty of the trial court under R.C. 2929.03(F) to articulate its reasoning or to suggest that such an omission is insignificant. It is not. The failure of a trial court to comply with this aspect of R.C. 2929.03(F) disrupts the review procedures enacted by the General Assembly by depriving the defendant and subsequent reviewing courts of the trial court's perceptions as to the weight accorded all relevant circumstances. In a closer case, those perceptions could make a difference in the manner in which a defendant pursues his appeal and in which a reviewing court makes its determination.

*Id*.

{¶ 72} This case presents the closer call that we anticipated in *Maurer*.[13] We find that the sentencing opinion is so inadequate as to severely handicap our ability to exercise our power of independent review. Accordingly, we must vacate Roberts's sentence of death and remand this case for resentencing.

{¶ 73} On remand, the trial court is to review the entire record, including Roberts's allocution of October 22, 2007. The trial court shall consider the entire record—again, including the allocution—in determining whether the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt. The trial court shall then write and file a sentencing opinion pursuant to R.C. 2929.03(F) reflecting that it has complied with these instructions.

---

13. The dissent, in stressing the role of independent review in curing errors by the sentencing court, fails to take account of *Maurer*.

{¶ 74} In accordance with our holding as to Roberts's first proposition of law, Roberts is not entitled to present any further evidence on remand. Moreover, because Roberts has been given her opportunity to make allocution pursuant to Crim.R. 32, she is not entitled to make another one.

{¶ 75} Finally, while the trial court must consider Roberts's allocution, nothing in today's opinion should be interpreted as a determination that the matters discussed in her allocution are true or that the trial court must afford them any particular weight. It is for the trial court to determine in the first instance what mitigating factors, if any, are present in the case, and what weight, if any, they should be given.

{¶ 76} Roberts's second proposition of law is sustained.

III. Nonstatutory Aggravating Circumstances in Sentencing Opinion

{¶ 77} In her third proposition of law, Roberts contends that the trial court's sentencing opinion demonstrates that the trial court erroneously considered nonstatutory aggravating circumstances in sentencing her to death. Inasmuch as the trial court, on remand, will be required to write a new sentencing opinion, we find that Roberts's third proposition of law is moot.

IV. Denial of Recusal Motion

{¶ 78} In her fourth proposition of law, Roberts contends that the trial judge should have recused himself from her resentencing. However, during the pendency of this appeal, the trial judge died. Because we are remanding this case for resentencing, which necessarily will be conducted by a different judge, we find that Roberts's fourth proposition of law is moot.

V. Ineffective Assistance of Counsel

{¶ 79} In her fifth proposition of law, Roberts contends that her counsel rendered ineffective assistance at her 2003 mitigation hearing. She argues that her counsel "fail[ed] to fully investigate and present all possible evidence of mitigation." Specifically, Roberts complains that trial counsel failed to discover

and present information contained in her Social Security file and in a letter to the trial court written by her son, both of which she proffered to the trial court on remand in 2007. The state argues that Roberts's current ineffective-assistance claim with regard to the mitigation hearing is barred by res judicata, inasmuch as Roberts did not raise it on her original appeal to this court.

{¶ 80} In light of our disposition remanding this case to the trial court for resentencing, we decline to address Roberts's fifth proposition of law at this time. If Roberts receives a death sentence on resentencing, the parties may present these arguments (including the state's res judicata argument) to us for review on the ensuing direct appeal.

### VI. Competency to Stand Trial

{¶ 81} Roberts's sixth and seventh propositions of law address her competency to stand trial during the mitigation hearing in 2003 and during the resentencing proceedings on remand in 2007. *See generally* R.C. 2945.37 (establishing standards and procedures for adjudicating defendant's competency to stand trial).

### A. Competency during the 2007 Resentencing

{¶ 82} A defendant is competent to stand trial if she has sufficient present ability to consult with her lawyer with a reasonable degree of rational understanding and has a rational as well as a factual understanding of the proceedings against her. *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). In her sixth proposition of law, Roberts contends that the state failed to prove that she met the standard of competency during her 2007 resentencing proceeding.

{¶ 83} Roberts contends that "[t]he trial court may not conduct a sentencing hearing for a death-eligible defendant where the record does not establish by a preponderance of the evidence that the defendant is legally competent," that "there was insufficient evidence of her ability to assist counsel in

preparation for the hearing," and that "[*w*]*ithout evidence* that Roberts *could* properly assist counsel, the [sentencing] hearing should not have been conducted." (Emphasis added.)

**{¶ 84}** Roberts's argument misallocates the burden of persuasion. R.C. 2945.37(G) provides:

> A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code.

Thus, the question is not whether the state introduced sufficient evidence to prove Roberts competent, but whether a preponderance of the evidence proved that she was *not* competent. *See State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 45; *State v. Jordan*, 101 Ohio St.3d 216, 2004-Ohio-783, 804 N.E.2d 1, ¶ 28; *State v. Hicks*, 43 Ohio St.3d 72, 79, 538 N.E.2d 1030 (1989). *See also Medina v. California*, 505 U.S. 437, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992) (assigning defendant burden of proving incompetency does not violate due process).

**{¶ 85}** The trial court appointed Dr. Thomas Gazley, a psychologist with the Forensic Psychiatric Center of Northeast Ohio, to conduct a competency evaluation. Dr. Gazley interviewed Roberts, had conversations with her defense attorneys and with the director of mental-health services at the Ohio Reformatory for Women, where Roberts was incarcerated, and reviewed her mental-health

chart from the reformatory. Dr. Gazley was the sole witness at the hearing on Roberts's competency. After he testified, his report was admitted without objection.

{¶ 86} Dr. Gazley testified that Roberts had the ability to "understand the sentencing process and * * * to understand what the alternatives available are to her as well as * * * to provide her counsel with any mitigating circumstances, should she desire to do so." He concluded that based on her ability to interact with him and to provide information and a coherent account of her perceptions about the situation, she would be able to do so with her defense counsel as well. Dr. Gazley further testified: "[W]hen I saw [Roberts] earlier this year, she was very coherent, her comments and responses to my questions were very relevant and * * * to the point." Dr. Gazley noted in his report that Roberts's "memory for both recent and remote events is intact" and that she "maintains the capacity for abstract thinking."

{¶ 87} Dr. Gazley knew that Roberts had been involved in a number of automobile accidents and had had several head injuries. He also knew that she had been diagnosed with depression and that she had engaged in suicidal thinking, which he attributed to her depression. However, Dr. Gazley testified that Roberts's depression had responded to treatment; by the time he saw her, her symptoms were in remission, and "[s]he was progressively getting better."

{¶ 88} Dr. Gazley's report states that his opinion, reached "with reasonable psychological certainty," is that Roberts "currently has the cognitive ability and functioning to understand, in a general way, the penalties that could or will be imposed as a result of her conviction" and that she "has the capacity to communicate relevant facts in mitigation to her attorney."

{¶ 89} Roberts argues that there was no testimony relevant to the issue of Roberts's ability to work with and assist counsel. Even if that were so, Roberts

could not prevail, because competency is presumed and the defense bears the burden of proving incompetency. R.C. 2945.37(G).

{¶ 90} However, Dr. Gazley's testimony was relevant to the criteria for competency, including Roberts's ability to assist counsel. Dr. Gazley testified that Roberts was able to understand the sentencing process and what alternatives were available and to provide mitigating circumstances. After interviewing Roberts, Dr. Gazley concluded that Roberts had the ability to interact with defense counsel and to provide information and a coherent account of her own perceptions about the situation to her counsel.

{¶ 91} Roberts contends that Dr. Gazley did not know her psychological history before her incarceration and that he had neither reviewed her Social Security records nor obtained a neuropsychological evaluation of the effects of her head injury. However, Dr. Gazley explained that none of this mattered to his evaluation of Roberts's competency at the time of resentencing, because that evaluation was based on his interview with Roberts:

> I base my opinion * * * on the information that I receive from the subject at the time I do the interview. * * * I make my decision about the opinion based on the responses the person provides me to the questions I asked that I believe are related to the questions the Court needs to address, rather than the [past] diagnosis.

{¶ 92} A criminal defendant's competency to stand trial, including competency to assist in a sentencing proceeding, is a question of fact. *See Maggio v. Fulford*, 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983) (upholding state-court finding of competency that was fairly supported by the

record); *State v. Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, 790 N.E.2d 303, ¶ 33 (deferring to trial court's "factual findings" that defendant was competent).

{¶ 93} Dr. Gazley's testimony supports the trial court's finding that Roberts failed to prove by a preponderance of the evidence that she was not competent to stand trial at the time of her sentencing proceeding in 2007. Because "there was some reliable, credible evidence supporting" the trial court's finding that Roberts was competent, we will not disturb that finding. *Vrabel* at ¶ 33. Roberts's sixth proposition of law is overruled.

## B. Competency during the 2003 Mitigation Hearing

{¶ 94} In her seventh proposition of law, Roberts contends that there was insufficient evidence to prove that she was competent to stand trial during her original mitigation hearing in 2003. Roberts also claims that the trial court failed to conduct a full evidentiary hearing into her competency.

{¶ 95} These claims are res judicata. They are based entirely on the record of the 2003 hearing. Thus, Roberts could have, and should have, raised these issues in *Roberts I*. She is barred from raising them now. "Where an argument could have been raised on an initial appeal, *res judicata* dictates that it is inappropriate to consider that same argument on a second appeal following remand." *State v. D'Ambrosio*, 73 Ohio St.3d 141, 143, 652 N.E.2d 710 (1995). *See also State v. Gillard*, 78 Ohio St.3d 548, 549, 679 N.E.2d 276 (1997) (issues not raised on prior appeal are barred by res judicata and overruled without further consideration).

## Conclusion

{¶ 96} Under the unique circumstances present here, we find that the trial court failed to consider relevant mitigating evidence contained in Roberts's allocution. Accordingly, we vacate the death sentence and remand this case for resentencing on the basis of the existing record. On remand, the trial court must consider all the mitigating evidence reflected in the record, including Roberts's

allocution, weigh the aggravating circumstances against the mitigating factors, and file a sentencing opinion that reflects that it has complied with these instructions. In doing so, the trial court must make an independent determination of whether a death sentence is appropriate and may not give deference to the sentences previously entered.

Judgment reversed
and cause remanded.

PFEIFER, LANZINGER, and FRENCH, JJ., concur.

O'NEILL, J., concurs in part and dissents in part.

O'DONNELL and KENNEDY, JJ., dissent.

_____

**O'NEILL, J., concurring in part and dissenting in part.**

{¶ 97} The questions addressed by the majority and the dissent are significant, but I do not believe it is necessary to decide them in this case. Our previous remand order required the trial court to "afford Roberts her right to allocate, * * * personally review and evaluate the evidence, weigh the aggravating circumstances against any relevant mitigating evidence, and determine anew the appropriateness of the death penalty as required by R.C. 2929.03." *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 167. I believe that order was sufficient on its face, but unfortunately it was not followed by the trial court.

{¶ 98} As Justice O'Donnell points out, a capital defendant's statutory right to make an unsworn statement in mitigation under R.C. 2929.03(D)(1) is " 'not an allocution under the rule.' " (Emphasis deleted.) Dissenting opinion at ¶ 110, quoting *State v. Campbell*, 90 Ohio St.3d 320, 326, 738 N.E.2d 1178 (2000). And if we were addressing this issue in the first instance, the dissent might well be correct in concluding that the defendant's allocution "has no significance in establishing any mitigating factor." *Id.* at ¶ 116. But our previous

remand order was not limited to permitting allocution—it required the court to evaluate "any relevant mitigating evidence" and make its sentencing decisions "anew." I would hold that the trial court failed to comply with this remand order in that it failed to accept and evaluate relevant mitigation evidence, including the unsworn statement offered by the defendant.

{¶ 99} Given the clear language in our prior mandate, the trial court clearly erred by refusing to accept the defendant's evidence in mitigation. Even if I were to accept that the defendant had attempted to "update mitigation" with evidence of her good prison conduct and that such evidence was improper, majority opinion at ¶ 37, the trial court expressed no opinion on the relevance of that evidence and did not render a sentencing decision "anew" as directed. But I must also note that the majority's characterization here is inaccurate. As the majority observes, the defendant proffered four items in mitigation, only one of which dealt with her conduct in prison. And it is apparent that even the defendant's prison records, like her other proffered evidence, were submitted to demonstrate her continued mental illness, not her conduct. Moreover, as the majority itself recognizes, its analysis on this point is likely to be set aside by the federal courts on collateral review. *See* majority opinion at ¶ 31-33, citing *Davis v. Coyle*, 475 F.3d 761 (6th Cir.2007).

{¶ 100} Therefore, I concur in the court's judgment vacating the death sentence and remanding this case for resentencing, but I dissent as to the limitations placed on that resentencing by the majority. The defendant should be permitted to offer a case in mitigation, in accordance with both our prior remand and the Sixth Circuit's judgment in similar cases. And given both my opinion that capital punishment violates the Eighth Amendment to the Constitution of the United States and Article I, Section 9 of the Ohio Constitution, *see State v. Wogenstahl*, 134 Ohio St.3d 1437, 2013-Ohio-164, 981 N.E.2d 900, ¶ 2 (O'Neill, J., dissenting), and the fact that the record as currently constituted provides strong

evidence of the defendant's severe mental illness, I would hold that on remand the trial court is precluded from imposing the death penalty upon the defendant.

_____

**O'DONNELL, J., dissenting.**

{¶ 101} Respectfully, I dissent.

{¶ 102} The principal focus of this appeal concerns whether a trial court commits reversible error if it fails to include in its statutorily mandated capital-offense sentencing opinion a statement that it has considered the allocution of a convicted murderer. However, allocution is a statutory right, not a constitutional one, and it necessarily follows that the court's failure to affirmatively state that it considered the allocution does not rise to the level of constitutional error. Further, this court has never required the trial court to discuss in its sentencing opinion every consideration that factors into its sentence. Rather, our precedent establishes that any such error is cured by our independent sentence evaluation. Accordingly, this court should independently review the allocution and the sentence and determine whether the penalty imposed is in conformity with others in which the death penalty has been imposed.

### Allocution

{¶ 103} The purpose of allocution is "to permit a convicted defendant an opportunity to plead personally to the court for leniency in his sentence," *United States v. Tamayo*, 80 F.3d 1514, 1518 (11th Cir.1996), based on the consideration that "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself," *Green v. United States,* 365 U.S. 301, 304, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961) (Frankfurter, J., plurality opinion). Thus, courts recognize that "[t]he right to allocute is no more than the defendant's 'right to stand before the [sentencer] and ask in his own voice that he be spared.' " *People v. Davis*, 794 P.2d 159, 192 (Colo.1990), quoting *State v. Zola,* 112 N.J. 384, 430, 548 A.2d 1022 (1988).

**{¶ 104}** There is no recognized constitutional right to allocution. In *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), the Supreme Court rejected a claim that the Constitution requires the trial court to invite an accused represented by counsel to make a statement before sentencing, explaining that the failure to do so "is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure." And in *McGautha v. California*, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), *judgment vacated sub nom. Crampton v. Ohio*, 408 U.S. 941, 92 S.Ct. 2873, 33 L.Ed.2d 765 (1972), the court noted that "Ohio has provided for retention of the ritual of allocution, albeit only in its common-law form, precisely to avoid the possibility that a person might be tried, convicted, and sentenced to death in complete silence. We have held that failure to ensure such personal participation in the criminal process is not necessarily a constitutional flaw in the conviction."

**{¶ 105}** The Sixth Circuit Court of Appeals has also held that "[t]here is no constitutional right to allocution under the United States Constitution," *Pasquarille v. United States*, 130 F.3d 1220, 1223 (6th Cir.1997), and that federal law does not require Ohio to afford the accused an opportunity to make an unsworn statement, *Bedford v. Collins*, 567 F.3d 225, 237 (6th Cir.2009). Notably, the Sixth Circuit is not alone; almost every federal circuit court has held that allocution is not a constitutional right. *See United States v. Picard*, 464 F.2d 215, 220 (1st Cir.1972), fn. 9; *United States v. Li*, 115 F.3d 125, 132 (2d Cir.1997), fn. 3; *United States v. Saferstein*, 673 F.3d 237, 243 (3d Cir.2012); *United States v. Lighty*, 616 F.3d 321, 365 (4th Cir.2010); *United States v. Reyna*, 358 F.3d 344, 349 (5th Cir.2004); *United States v. Covington*, 681 F.3d 908, 910 (7th Cir.2012); *United States v. Hoffman*, 707 F.3d 929, 937 (8th Cir.2013); *United States v. Smith*, 705 F.3d 1268, 1274 (10th Cir.2013); *United States v.*

*Fleming*, 849 F.2d 568, 569 (11th Cir.1988). It is only the Ninth Circuit that concludes that "the denial of the right to allocute is a due process violation." *United States v. Dablan*, 205 Fed.Appx. 620, 622 (9th Cir.2006).

{¶ 106} This court has previously suggested that the Constitution does not require allocution at the sentencing hearing. In *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, 787 N.E.2d 1185, we rejected a claim that the trial court violated the constitutional rights of the accused by denying his request to give his statement through questioning by counsel, explaining that "the majority view [regarding the right to allocution] does not support a holding that a defendant has a constitutional right even to make an unsworn statement, let alone an unsworn statement in a question-and-answer format." *Id.* at ¶ 103. And in *Lancaster v. Green*, 175 Ohio St. 203, 192 N.E.2d 776 (1963), we denied a writ of habeas corpus to an offender who claimed that the trial court's failure to include the allocution in the sentence invalidated it, stating that "the failure to include the allocution in the certificate of sentence did not void the sentence. In fact, the absolute failure to accord petitioner this right is not a ground for relief by habeas corpus." *Id.* at 206, citing *Hill*, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417.

### Confusion regarding Allocution

{¶ 107} The term "allocution" has been used to refer to different statements made by an offender. For example, a statement made by a defendant at the time of a plea has been described as an allocution. Such a statement can give a court a factual basis to adjudicate guilt. *United States v. Garcia*, 587 F.3d 509, 514 (2d Cir.2009) (explaining that the trial court may examine the accused's plea allocution in determining whether a sufficient factual basis supports the plea); *State v. Jones*, 6th Dist. Sandusky No. S-08-034, 2010-Ohio-1780, ¶ 17 ("A plea allocution is conducted only after the individual has been fully apprised of and waived a litany of constitutional rights, including Fifth Amendment rights").

{¶ 108} In Ohio, R.C. 2929.03(D)(1) permits an accused to make a statement to the jury or fact-finder during the penalty phase of a capital-murder trial and further provides that such a statement is not subject to cross-examination unless the accused makes the statement under oath. This unsworn statement permits the accused to address the jury or fact-finder in an effort to influence the penalty recommendation and is sometimes referred to as allocution, but in fact, it is a part of the penalty phase of the trial. *State v. Campbell*, 90 Ohio St.3d 320, 326, 738 N.E.2d 1178 (2000); *State v. Roe*, 41 Ohio St.3d 18, 26, 535 N.E.2d 1351 (1989) (noting that the statute provides that all mitigating evidence must be presented before the jury makes a recommendation in the penalty phase of trial; "[a] defendant may not wait for an unfavorable jury recommendation before presenting all relevant evidence in mitigation of sentence").

{¶ 109} The foregoing examples of statements are not implicated in this case. Rather, the common-law right to allocution applicable in capital and noncapital cases is contained in Crim.R. 32(A)(1), which directs the trial court, prior to imposing sentence, to afford counsel an opportunity to speak on behalf of the defendant and to address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment. This statement is not made under oath, is not subject to cross-examination, and is not evidence—but it can be considered by the court in imposing its sentence.

{¶ 110} We distinguished the right to make an unsworn statement afforded by R.C. 2929.03(D)(1) from the allocution before sentence is pronounced in *Campbell*, where we said, "No authority requires a trial court to inform a capital defendant of his right to make an unsworn, penalty-phase statement. Crim.R. 32(A)(1) does not apply, because *an unsworn statement under R.C. 2929.03(D)(1) is not an allocution under the rule*." (Emphasis added.) *Id.* at 326. Thus, a penalty-phase statement may be relevant to weighing whether the aggravating

circumstances were sufficient to outweigh the mitigating factors, but an allocution is not.

{¶ 111} In this case, pursuant to our order on remand, the trial court allowed Roberts to allocute prior to reimposing sentence. And before it imposed the sentence, the court stated that it had considered the record and the oral statements, which included her allocution. In my view, no reasonable inference may be drawn from the failure of the trial court to specifically incorporate the content of the allocution made by Roberts in its sentencing opinion. Obviously, because we remanded for that right to be accorded before sentencing, the trial court listened to Roberts and was aware of what she presented. In this case, then, " '[t]here is no showing of irregularity to contradict the presumption of regularity accorded all judicial proceedings.' " *State v. Raber*, 134 Ohio St.3d 350, 2012-Ohio-5636, 982 N.E.2d 684, ¶ 19, quoting *State v. Sweet,* 72 Ohio St.3d 375, 376, 650 N.E.2d 450 (1995).

{¶ 112} We have previously held that in considering mitigating factors in a capital-offense sentencing opinion, the failure to incorporate and discuss all of them in its sentencing opinion does not mean that the trial court did not consider them and that such a failure is not reversible error. *E.g.*, *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 363; *State v. Phillips*, 74 Ohio St.3d 72, 102, 656 N.E.2d 643 (1995). In *Phillips*, we considered the argument that "the trial court's sentencing opinion fail[ed] to give effect to all of the mitigation evidence offered by appellant." *Id.* We concluded:

> [Phillips] erroneously assumes that evidence that is not specifically mentioned in an opinion was not considered. While a sentencing court must consider all evidence of mitigation, it need not discuss each factor individually. *Parker v. Dugger* (1991), 498 U.S. 308, 314–315, 111 S.Ct. 731, 736, 112 L.Ed.2d 812, 822. Further, even

> if "the trial court in this case should have more explicitly analyzed the mitigating evidence," this court's independent reweighing will rectify the error. *State v. Lott* (1990), 51 Ohio St.3d 160, 171-172, 555 N.E.2d 293, 305.

*Id.* We therefore rejected that claim.

{¶ 113} This case is less egregious than *Phillips*, because the allocution statement made by Roberts before sentencing is not evidence; rather it is an opportunity for the defendant to make a personal statement in her own behalf or to present any information in mitigation of punishment, such as an apology, a request for mercy, or an appeal for leniency. A trial court may exercise its discretion in considering the allocution when imposing sentence.

{¶ 114} The majority confuses allocution—which is not evidence—with the opportunity to present an unsworn statement in the penalty phase of the trial and the right to present mitigating evidence to the jurors or fact-finders, and it concludes that the sentence of death violated the Eighth Amendment, specifically because the allocution contained relevant mitigating evidence. It is true that a sentencer cannot refuse to consider mitigating evidence before imposing the death penalty, *see, e.g.*, *Eddings v. Oklahoma*, 455 U.S. 104, 113-114, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), but in this case, Roberts had waived her right to present mitigating evidence during the penalty phase of the trial.

{¶ 115} More significantly, however, an unsworn statement in allocution is not evidence. *Biddinger v. State*, 868 N.E.2d 407, 413 (Ind.2007); *People v. Davis*, 794 P.2d at 192. Nor is allocution intended to prove or disprove facts relevant to sentencing. *State v. Lord*, 117 Wash.2d 829, 897, 822 P.2d 177 (1991); *Davis* at 192. Thus, an allocution statement made prior to sentencing pursuant to Crim.R. 32(A)(1) is not admissible evidence. *See* Evid.R. 603; *Allstate Ins. Co. v. Rule*, 64 Ohio St.2d 67, 69, 413 N.E.2d 796, 798 (1980)

("Section 7 of Article I of the Constitution of Ohio requires an oath or affirmation as a prerequisite to the testimony of a witness" [footnote omitted]); *Stores Realty Co. v. Cleveland,* 41 Ohio St.2d 41, 42, 322 N.E.2d 629 (1975) ("it is error for unsworn testimony to be admitted in evidence"); *Clinton v. State*, 33 Ohio St. 27 (1877), paragraph two of the syllabus ("every one offered as a witness in a court must take an oath or affirmation before giving testimony").

{¶ 116} I therefore disagree with the conclusion of the majority that Roberts's statement "contained much information whose relevance as mitigation was clear." Majority opinion at ¶ 57. Because the allocution offered by Roberts prior to the imposition of sentence is not evidence, it has no significance in establishing any mitigating factor.

**Conclusion**

{¶ 117} Neither the United States nor the Ohio Constitution requires a trial court to permit allocution by a person convicted of a crime. Rather, in Ohio, the legislature has allowed a capital defendant to make a penalty-phase statement on his own behalf and to provide any information relevant to the penalty that should be imposed. But an unsworn allocution statement made after the penalty phase is not mitigating evidence. The omission of any reference to what Roberts said during allocution in the trial court's sentencing opinion does not permit an inference that the court failed to consider those statements, nor does it constitute reversible error.

{¶ 118} Even if the failure to refer to the allocution in the sentencing opinion did constitute error, "[o]ur independent sentence evaluation and reweighing can cure the effect of errors in previous death-penalty sentencing decisions." *State v. Bey*, 85 Ohio St.3d 487, 505, 709 N.E.2d 484 (1999). Although the sentencer's consideration of mitigating evidence is mandated by the Constitution, *Eddings*, 455 U.S. at 113-114, 102 S.Ct. 869, 71 L.Ed.2d 1, we have held that our independent review can cure a trial court's failure to explain

how it weighed that evidence, *State v. Hill*, 75 Ohio St.3d 195, 210, 661 N.E.2d 1068 (1996). And we have recognized that " '[w]hile a sentencing court must consider all evidence of mitigation, it need not discuss each factor individually.' " *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 363, quoting *Phillips*, 74 Ohio St.3d at 102, 656 N.E.2d 643. Tellingly, in *Clemons v. Mississippi*, 494 U.S. 738, 750, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), the court explained that the sentencer need not make written findings concerning mitigating circumstances in order for an appellate court to perform an independent sentence evaluation. Thus, contrary to the majority's conclusion here, the failure to discuss the allocution does not hinder our independent review of the sentence.

{¶ 119} And if it is not reversible error to fail to explain how a court weighed mitigating evidence, how can it be reversible error to fail to refer to the allocution in a sentencing opinion when that allocution is not evidence?

{¶ 120} Accordingly, there is no reason for this court to reverse the sentence based on the trial court's failure to expressly mention in its sentencing opinion that it had considered Robert's unsworn statement. I would overrule proposition of law II and address the remaining propositions of law on the merits.

KENNEDY, J., concurs in the foregoing opinion.

_____

Dennis Watkins, Trumbull County Prosecuting Attorney, and LuWayne Annos, Assistant Prosecuting Attorney, for appellee.

David L. Doughten and Robert A. Dixon, for appellant.

_____