[Cite as *State v. Sanchez*, 2014-Ohio-2263.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 100110

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JAVIER O. SANCHEZ

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-559337-B

**BEFORE:** E.T. Gallagher, J., Celebrezze, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** May 29, 2014

**ATTORNEY FOR APPELLANT**

Joseph E. Feighan, III
14516 Detroit Avenue
Lakewood, Ohio 44107


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:   Denise J. Salerno
        Daniel T. Van
Assistant Prosecuting Attorneys
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1} Defendant-appellant, Javier O. Sanchez ("Sanchez"), appeals the denial of a motion to vacate his guilty plea. We find no merit to the appeal and affirm.

{¶2} Sanchez was charged with one count of attempted murder, five counts of aggravated robbery, one count of felonious assault, three counts of kidnapping, one count of having a weapon while under disability, one count of drug possession, and one count of possession of criminal tools. The charges, that included one- and three-year firearm specifications, arose from two separate incidents in which Sanchez and two codefendants robbed neighborhood bakeries. During the first robbery, that occurred on December 21, 2011, Sanchez allegedly shot one of the bakery employees in the head.

{¶3} The court appointed Ed Wade as defense counsel. Sanchez and Mr. Wade attended approximately ten pretrials and met privately on numerous occasions. However, at a hearing on the eve of trial, Mr. Wade stated that when he informed Sanchez that he was not likely to prevail at trial and recommended that he accept the prosecution's plea offer, their attorney-client relationship broke down. Although Mr. Wade communicated with Sanchez through a Spanish interpreter, he told the court, "I'm convinced he understands." The court allowed Mr. Wade to withdraw and appointed attorney Oscar Rodriguez as counsel.

{¶4} At a subsequent plea hearing, Rodriguez stated that he reviewed all the evidence and explained it to Sanchez along with the possible defenses and penalties. The

court confirmed with Sanchez that he understood the facts the state would rely on in presenting its case at trial and discussed the terms of the plea agreement. Sanchez informed the court that he was not under the influence of any illegal drugs or alcohol but stated that he was taking Lexapro for depression and because he "heard voices." He also told the court that he was not taking any medications prior to his incarceration and that the Lexapro was "helping."

{¶5} Sanchez stated that he understood the terms of the plea agreement and the maximum penalties involved, including the forfeiture of his property and postrelease control. The court reviewed the constitutional rights Sanchez was waiving by pleading guilty, and Sanchez indicated that he understood those rights and the ramifications of his plea. At times throughout the proceedings, Sanchez asserted that he did not understand something the judge was explaining. The court carefully explained each issue as it arose, answered all of Sanchez's questions, and confirmed that he understood every aspect of the proceedings before proceeding with the plea.

{¶6} Following the plea, the victims made statements describing the pain they have suffered as a result of Sanchez's actions. After hearing their remarks, Sanchez stated, through an interpreter:

> I ask you to forgive me with all my heart. I don't know what kind of sentence you are going to give me. They might throw away the key. I'm going to ask my mother and my father, my wife, and my little baby to forgive me. The sentencing I ask that you forgive me with the error I made. I was under drugs.

{¶7} At the sentencing hearing, Sanchez instructed Mr. Rodriguez to hand the judge a note. Rodriguez handed the note to the judge stating: "I have not seen the contents of it. He would ask the court to read the contents into the record." In the letter, which was written in English, Sanchez stated that he was not fully aware of his plea and that he wished to withdraw his plea. He claimed Rodriguez was dishonest and rendered ineffective assistance of counsel.

{¶8} The court subsequently held a hearing on Sanchez's oral motion to withdraw his guilty plea at which Sanchez claimed, for the first time, that he has a serious mental illness that prevented him from understanding the effect of his plea. The court referred Sanchez to the probation department for a mitigation report and continued the hearing to a later date. The court also removed Mr. Rodriguez from the case and assigned Libert Pinto as Sanchez's new counsel.

{¶9} The mitigation report indicated that Sanchez suffered from polysubstance dependence and a non-specified psychotic disorder. Mr. Pinto represented to the court that Sanchez was unable to talk and was therefore unable to assist in his own defense. The court noted that Sanchez had filed numerous motions in English and warned that if he continued to file pro se motions, the court would consider them as evidence of competency. The court noted other contradictions that suggested Sanchez was competent but nevertheless referred him for an evaluation at Northcoast Behavioral Healthcare ("Northcoast Behavioral").

{¶10} Dr. Susan Hatters-Friedman ("Dr. Hatters-Friedman"), a psychiatrist at Northcoast Behavioral, completed an evaluation and opined that Sanchez did not have the ability to understand the nature and objectives of the proceedings and was not presently capable of assisting in his defense. During a hearing to determine whether Sanchez should be sent to a maximum security facility for psychiatric treatment, Deputy Ryan Burne ("Burne") testified that on two occasions, Sanchez spoke to him in English and said that he was going to take Burne's gun and uniform and escape from jail. When Burne later brought Sanchez to the courtroom holding cell, he observed Sanchez using an interpreter and asked him why he was using an interpreter when he speaks English "just fine." Based on Burne's testimony, the court concluded Sanchez was a security risk and sent him to Twin Valley Behavioral Center ("Twin Valley") to be restored to competency.

{¶11} Within two weeks, Dr. Bob Stinson ("Dr. Stinson"), a forensic psychologist at Twin Valley, evaluated Sanchez and determined that he was restored to competency. At the subsequent competency hearing, Dr. Stinson testified that Sanchez had a good understanding of the nature and objective of the trial proceedings. Sanchez provided relevant details about his case that Dr. Stinson was not aware of from the records. Sanchez also demonstrated the ability to advocate for himself.

{¶12} Dr. Stinson further testified that it is unusual that someone could be restored to competency within two weeks. When asked what might explain Sanchez's rapid restoration to competency, Dr. Stinson explained that Sanchez either embellished his

deficits during his first evaluation with Dr. Hatters-Friedman, responded remarkably well to treatment, or a combination of these.

{¶13} When asked whether his opinion that Sanchez was competent would change knowing that Sanchez pleaded guilty, he stated: "No, it does not change my opinion. In fact, Mr. Sanchez at the time of my evaluation demonstrated that he understands the ramifications of a guilty plea." When asked if his opinion would change knowing that Sanchez filed "dozens" of motions, against counsel's advice, Dr. Stinson said, "No * * * it actually impresses me as being self-promoting."

{¶14} The court ultimately denied Sanchez's motion to withdraw his guilty plea and sentenced Sanchez to 20 years in prison. Sanchez now appeals and raises five assignments of error, which we address out of order for the sake of economy.

**Guilty Plea**

{¶15} In the third assignment of error, Sanchez argues the trial court abused its discretion when it denied his motion to withdraw his guilty plea after finding that he was mentally ill and unable to assist his trial counsel. Sanchez contends that Dr. Hatters-Friedman's determination that he was incompetent indicates he was not competent at the plea hearing and that he therefore did not enter his guilty pleas knowing, intelligently, and voluntarily.

**{¶16}** Generally, a motion to withdraw a guilty plea made before sentencing should be freely and liberally granted. *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). However, a defendant does not have an absolute right to withdraw his plea before sentencing. *Id.* at paragraph one of the syllabus. The trial court is required to "conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Id.* Following the hearing, the trial court's decision to grant or deny a motion to withdraw a plea will be upheld absent an abuse of discretion. *Id.* at 527.

> No abuse of discretion is demonstrated where (1) the accused is represented by highly competent counsel, (2) the accused was afforded a full hearing, pursuant to Crim.R. 11, before entering the plea, (3) after the motion to withdraw is filed the accused is given a complete and impartial hearing on the motion, and (4) the record reveals that the trial court gave full and fair consideration to the plea withdrawal request.

*State v. Walcot*, 8th Dist. Cuyahoga No. 99477, 2013-Ohio-4041, ¶ 18, quoting *State v. Tull*, 168 Ohio App.3d 54, 2006-Ohio-3365, 858 N.E.2d 828, ¶ 8 (2d Dist.).

**{¶17}** Sanchez does not dispute that he was represented by competent counsel at the plea hearing or that he was afforded a full hearing pursuant to Crim.R. 11. He also does not dispute that he received a full hearing on the motion to withdraw his guilty plea. He contends the trial court failed to give full and fair consideration to his request to withdraw his plea. The record, however, does not support this allegation.

**{¶18}** A defendant is presumed to be competent to stand trial. R.C. 2945.37(G); *State v. Roberts*, 137 Ohio St.3d 230, 2013-Ohio-4580, 998 N.E.2d 1100, ¶ 84. Dr. Stinson testified that a mentally ill defendant may be capable of making an intelligent

decision at a plea hearing but when he returns to court at a later date for sentencing, he is no longer capable of understanding the proceedings. Thus, according to Dr. Stinson, Sanchez could have been competent at the plea hearing but was not competent at the time Dr. Hatters-Friedman conducted her evaluation. Indeed, Dr. Stinson believed Sanchez was competent at the plea hearing. He testified:

Q: Well, assume for purposes of this hearing that, against the advice of counsel, he has and continues to file dozens of motions. Would that change your opinion as to whether he understands his surroundings and the proceedings against him and the ability to assist in his defense?
A: No. That alone would not change my opinion.

Q: Well, that taken together with the fact that he's seeing things and hearing things and the fact that now he's already entered a guilty plea, would those four things together affect your opinion?

A: I don't have any evidence that he was seeing things. I've already testified that I don't think that hearing things affected his competency. I think I also indicated that I'm not terribly concerned about his tendering a guilty plea because he understands the ramifications of that. To me, it's not uncommon for persons diagnosed with antisocial personality disorder to ignore the advice of their counsel. So I guess my answer to you is, it doesn't.

{¶19} As previously stated, Sanchez was restored to competency within two weeks. When asked how Sanchez could have been restored so quickly, Dr. Stinson replied:

One possibility is if he was embellishing his deficits prior to getting to Twin Valley and decided Twin Valley wasn't as desirous as he thought. A second option is that he responded extremely well to the psychotropic medication he was offered. The third option is a combination of those two; one, motivation and, two, improvement in symptoms.

Therefore, according to Dr. Stinson, Sanchez may not have been as "incompetent" as Dr. Hatters-Friedman found during her evaluation. Dr. Hatters-Friedman spent 75 minutes evaluating Sanchez, while Dr. Stinson spent three and one-half hours reviewing records and two hours and 45 minutes working with Sanchez.

{¶20} Despite Dr. Hatters-Friedman's finding that Sanchez was not competent after the first sentencing hearing, the court found he was competent at the plea hearing. In making its ruling, the court recounted how Mr. Rodriguez stated at the plea hearing that he discussed the case with Sanchez and believed he would be entering his plea knowingly, intelligently, and voluntarily. The court confirmed with Sanchez that he discussed the case with Mr. Rodriguez, and Sanchez indicated that he understood (1) the facts the state would rely on to present its case against him at trial, (2) the maximum penalties he could receive at sentencing, and (3) the terms of the plea agreement.

{¶21} The court commented that Sanchez's "impassioned plea for mercy" at the plea hearing, after hearing the victim's statements, demonstrated an understanding of the consequences of his actions including the plea and the lengthy prison term he faced. In addition, after hearing Burne's testimony that he observed Sanchez speak English "just fine," coupled with his pro se motions, and Dr. Stinson's opinion that Sanchez may have exaggerated his deficits, the court commented that Sanchez's actions belied his claims of incompetency.

{¶22} In considering whether there was "a reasonable and legitimate basis for withdrawal of the plea," the court stated:

[T]he record discloses no protestations of innocence at the time the Court accepted the Defendant's guilty plea. In fact, there aren't any now. He just hopes to receive a lesser sentence is what I read from [Dr. Stinson's] report. * * * As he said "I just don't want to go to jail, man."

The court also observed that, according to Dr. Stinson, Sanchez may have embellished his deficits in an attempt to gain some advantage. If this were the case, such actions indicate not only competency but sophistication.

{¶23} The record shows that the court considered Sanchez's actions, whether there was a legitimate basis for withdrawal of the plea, and the expert testimony suggesting Sanchez may have exaggerated his deficits in an attempt to receive a better plea agreement. Thus, the trial court gave full and fair consideration to Sanchez's motion to withdraw his guilty plea and there was no abuse of discretion.

{¶24} The third assignment of error is overruled.

### Plain Error

{¶25} In the first assignment of error, Sanchez argues the trial court committed plain error when it denied his presentence motion to withdraw his guilty pleas after finding he was mentally ill and unable to assist counsel. In the second assignment of error, he argues the trial court committed plain error when it failed to vacate his guilty pleas.

{¶26} However, the doctrine of plain error is not applicable in this case. Crim.R. 52(B), which governs plain error, states that "[p]lain errors or defects affecting substantial rights may be noticed *although they were not brought to the attention of the court*." (Emphasis added.) Because Sanchez moved for leave to withdraw his guilty plea, he

brought the validity of the guilty plea to the court's attention. Indeed, Sanchez's motion resulted in numerous hearings to address the issue. Therefore, the doctrine of plain error does not apply to the issues presented in this appeal. In any event, because the trial court acted within its discretion when it overruled Sanchez's motion to withdraw his guilty plea, there was no plain error.

{¶27} The first and second assignments of error are overruled.

### Ineffective Assistance of Counsel

{¶28} In the fourth and fifth assignments of error, Sanchez argues he was denied his Sixth Amendment right to the effective assistance of counsel. He contends his trial counsel was ineffective for failing to move for and argue that his guilty pleas should have been vacated because he was incompetent at the time of the plea hearing.

{¶29} To establish ineffective assistance of counsel, a defendant must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different. *Strickland v. Washington,* 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

{¶30} Despite Sanchez's statements to the contrary, his trial counsel advocated for the withdrawal of his guilty plea. At the sentencing hearing, after having had the opportunity to confer with Sanchez, Mr. Rodriguez made an oral motion to withdraw the

guilty pleas. At the hearing on the motion to withdraw the guilty plea, Mr. Pinto informed the court that Sanchez was unable to speak or assist in his defense. Mr. Pinto also argued that he was not convinced Sanchez understood what was going on at the plea hearing. Therefore, Sanchez's lawyers argued the merits of his motion.

{¶31} Further, Sanchez cannot demonstrate that he suffered any prejudice as a result of his counsel's actions. The motion to withdraw was brought to the court's attention, and the court held several hearings to ensure that Sanchez's rights were protected. Moreover, Dr. Stinson opined that Sanchez was likely competent at the time of the plea hearing because he demonstrated a good understanding of the proceedings and the effects of his guilty plea, was restored to competency remarkably fast, and showed acts of self-promotion. Therefore, even if Sanchez's trial counsel would have asserted the merits of Sanchez's motion more aggressively, the court's decision to deny the motion would not have changed.

{¶32} Therefore, the fourth and fifth assignments of error are overruled.

{¶33} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
MELODY J. STEWART, J., CONCUR