[Cite as *State v. Stutzman*, 2019-Ohio-1695.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| STATE OF OHIO | C.A. No. 18AP0038 |
|---|---|
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| RODNEY R. STUTZMAN | COURT OF COMMON PLEAS COUNTY OF WAYNE, OHIO |
| Appellee | CASE No. 11-CR-0022 |

DECISION AND JOURNAL ENTRY

Dated: May 6, 2019

CARR, Judge.

{¶1} Appellant, the State of Ohio, appeals from the judgment of the Wayne County Court of Common Pleas, finding Appellee, Rodney Stutzman, incompetent to stand trial. This Court reverses and remands.

I.

{¶2} In January 2011, the police conducted a welfare check at the home of Stutzman's parents because another family member had been unable to reach them for several days. The officer who responded to their home found a note on their door that read: "Going on a trip out west for three months. See ya all when we get back." He also spotted a broken basement window. Once he entered the home, he looked in the basement and discovered the parents' bodies. Both the parents had sustained gunshot wounds to the head, and the husband had been decapitated.

{¶3} Several days later, the police apprehended Stutzman in West Virginia. He was driving his father's truck and had in his possession his father's driver's license, his mother's health insurance card, multiple credit cards belonging to his parents, and a check for $5,000, drawn on their account and made payable to him. Inside the truck, the police found a pair of bloodied jeans and shoes. Subsequent DNA testing confirmed that the blood belonged to his parents. Additionally, handwriting experts matched samples of Stutzman's handwriting to the handwritten note left on his parents' door.

{¶4} As a result of the foregoing events, Stutzman was indicted on two counts of capital murder and other serious offenses. He was appointed counsel, and his counsel soon raised with the court the question of Stutzman's competence. The defense retained Dr. Galit Askenazi, a board certified forensic psychologist and clinical neuropsychologist, to evaluate Stutzman and submit her report to the court. Upon its review of that report, the court determined that Stutzman was incompetent to stand trial, but restorable. As such, it committed him to the care of the Timothy B. Moritz Forensic Unit of Twin Valley Behavioral Healthcare ("Twin Valley") and ordered him to undergo competency restoration treatment.

{¶5} Within six months of Stutzman's admission to Twin Valley, Dr. Bob Stinson, a board certified forensic psychologist, reported that Stutzman did not suffer from any mental illness and that his purported symptoms were the result of malingering. The court scheduled the matter for a competency review hearing, and Stutzman was transferred to the jail for his upcoming hearing. Multiple continuances then ensued, however, and resulted in Stutzman remaining at the jail for more than fourteen months. During that time, Dr. Askenazi reevaluated him and submitted an updated report. Consistent with her report, she testified at the competency review hearing that Stutzman remained incompetent. Meanwhile, the State called Dr. Delaney

Smith, a board certified forensic psychiatrist who had treated Stutzman at Twin Valley. Dr. Smith did not offer an opinion on the ultimate issue of Stutzman's competence, but testified that his behavior was consistent with malingering rather than any type of psychosis or major mental illness. Faced with the testimony of competing experts, the court found Dr. Askenazi's opinion more credible than Dr. Smith's. As such, it found Stutzman incompetent to stand trial.

{¶6} Due to the expiration of the statutory time period for competency restoration, the court held additional proceedings to determine whether it would retain jurisdiction over Stutzman. The court ultimately concluded that Stutzman was a mentally ill person subject to hospitalization by court order, so it issued an order retaining jurisdiction over him. Pursuant to that determination, the court once again committed Stutzman to the care of Twin Valley.

{¶7} The court scheduled another competency review hearing the following year, by which point in time Stutzman had met with several additional mental health professionals. The State presented an annual comprehensive report from Dr. Smith, as well as her testimony, and the testimony of Dr. Dennis Eshbaugh, a forensic psychologist who had evaluated Stutzman for competency at the behest of the State. Both opined that Stutzman was malingering and did not have a serious mental illness. Dr. Askenazi, however, presented a contrary opinion on behalf of the defense, having completed an updated report. Once again faced with the testimony of competing experts, the trial court placed greater weight on Dr. Askenazi's opinion and found that Stutzman remained incompetent.

{¶8} Almost two years later, Dr. John Tilley, a board certified forensic psychologist, issued a status report regarding Stutzman's competence. Dr. Tilley reported that Stutzman had not manifested any genuine indications of a serious mental illness, was likely malingering, and was likely competent to stand trial. In light of his report, the court scheduled another

competency review hearing. The hearing was ultimately postponed for over a year, however, due to various continuances and the need for further discovery. During that time, Dr. Askenazi issued another report, Dr. Tilley issued a second status report and an amended report, and Dr. Askenazi issued a supplemental report. When the hearing finally occurred, the State presented the testimony of (1) Dr. Tilley; (2) Dr. Smith; (3) Dr. David Soehner, a board certified forensic psychiatrist who had acted as Stutzman's attending psychiatrist at multiple points; (4) a licensed social worker who had interacted with Stutzman throughout the duration of his two stays at Twin Valley; and (5) a registered nurse who also had interacted extensively with Stutzman during his stays. Each of the State's five witnesses testified that Stutzman was malingering. Meanwhile, Dr. Askenazi, testifying as the only witness for the defense, maintained that Stutzman remained incompetent. Following the hearing, the court determined that Stutzman would continue his commitment at Twin Valley, as he remained incompetent to stand trial.

{¶9} Following the trial court's most recent ruling, the State sought leave to appeal from its competency determination, and this Court granted the State's motion. *See State v. Stutzman*, 9th Dist. Wayne No. 18AP0038 (Oct. 3, 2018). The State's appeal is now before this Court, raising one assignment of error for our review.

II.

### ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FINDING THAT MR. STUTZMAN REMAINED INCOMPETENT TO STAND TRIAL WHEN THE STATE PRESENTED OVERWHELMING EVIDENCE OF HIS COMPETENCE.

{¶10} In its sole assignment of error, the State argues that the trial court erred when it concluded that Stutzman remains incompetent to stand trial. For the following reasons, we reverse and remand this matter to the trial court.

{¶11} When a defendant has been deemed incompetent and unrestorable, R.C. 2945.38(H)(3), has been committed to the care of a mental health facility, R.C. 2945.39(D)(1), and has been found subject to the continuing jurisdiction of the trial court due to his status as a mentally ill person subject to court order, R.C. 2945.39(A)(2), the facility charged with his care shall report biannually to the court as to whether he remains incompetent. R.C. 2945.401(C). If the facility reports that the defendant is presently competent, or the court otherwise has reasonable cause to believe that is the case, the court shall schedule a hearing on the defendant's competency. R.C. 2945.401(J)(2)(a). If, following the hearing, the court determines that the defendant is competent, it shall order him to stand trial. *Id.* Conversely, if it determines that he remains incompetent, it shall order his continued commitment. R.C. 2945.401(J)(2)(b). The defendant's commitment shall continue until he regains his competency, the court determines that he is no longer a mentally ill person subject to court order, or the maximum prison term that he could have received for his most serious offense expires. *See* R.C. 2945.401(J)(1)(a), (J)(1)(b), and (J)(2)(b).

{¶12} Criminal defendants are presumed competent to stand trial. R.C. 2945.37(G). "[T]he burden is on the defendant to prove by a preponderance of the evidence that he is not competent." *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, ¶ 45. The question is "'whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" *State v. Berry*, 72 Ohio St.3d 354, 359 (1995), quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960). "One who lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not stand trial." *State v. Smith*, 9th Dist. Summit No. 27389,

2015-Ohio-2842, ¶ 9, citing *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 155. *Accord* R.C. 2945.401(J)(2)(a).

**{¶13}** "A criminal defendant's competency to stand trial * * * is a question of fact." *State v. Roberts*, 137 Ohio St.3d 230, 2013-Ohio-4580, ¶ 92. Deference, therefore, generally ought to be afforded to a trial court's competency determination, as "factual determinations are best left to those who see and hear what goes on in the courtroom." *State v. Cowans*, 87 Ohio St.3d 68, 84 (1999). *Accord State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, ¶ 59 ("As with other witnesses, the trial judge heard all of the expert testimony, and it was his job to judge their credibility and weigh all the evidence in making his findings."). A trial court's competency findings "will not be disturbed when there is some reliable and credible evidence supporting those findings." *Were* at ¶ 46.

**{¶14}** Having examined the trial court's decision in this matter, this Court is unable to conduct its appellate review in accordance with the foregoing standard. *See id.* That is because the trial court failed to convey its factual findings either on the record or in its journal entry. The court's entire journal entry reads as follows:

> On June 17, 2013, this court found [Stutzman] incompetent to stand trial pursuant to R.C. §2945.39. The court retained jurisdiction over [Stutzman]. On April 4 and 5, 2018, a hearing was held to review [his] competency to stand trial.
>
> This court has reviewed the evidence, the testimony of the witnesses and the arguments of counsel. The court's opinion that [Stutzman] is not competent to stand trial has not been altered, although defendant's condition seems to have improved with the administration of medication. [Stutzman] remains incompetent to stand trial as [he] is a mentally ill person subject to hospitalization and incapable of assisting his counsel in his own defense. [Stutzman] shall remain at [Twin Valley]. Pursuant to R.C. §2945.401(C), the facility shall report every two years as to whether [he] remains incompetent to stand trial.

The trial court did not outline any of the evidence it found compelling or indicate what weight, if any, it afforded any of the witnesses. To the extent it made findings in reaching its ultimate conclusion, it neglected to convey those findings so as to allow for meaningful appellate review.

{¶15} As noted, the State produced a wealth of evidence at Stutzman's latest competency review hearing. Four of its five witnesses were testifying in this matter for the first time, so there was never a prior opportunity for the court to weigh their respective opinions or to judge their credibility in reaching its decision. Moreover, the testimony they provided stood in stark contrast to that of Dr. Askenazi, the expert and only witness for the defense. The State's witnesses uniformly opined that Stutzman was malingering, and their opinions were the result of either (1) objective and highly-regarded psychological testing specifically designed to detect feigning, or (2) personal observations that either they made or other staff members at Twin Valley recorded as the result of having closely monitored Stutzman twenty-four hours a day, seven days a week for years. Meanwhile, Dr. Askenazi maintained that Stutzman suffered from genuine delusions that rendered him incompetent because they left him unable to assist his counsel. She administered her own psychological tests and acknowledged the validity of the State's tests, but essentially discounted both sets of test results because she felt that Stutzman's mental state had impacted them. Nevertheless, she also criticized opinions based on clinical judgment, noting that "[t]he research shows * * * clinical judgment is not as good as objective measures."

{¶16} As a reviewing court, "we are in no position to second-guess factual determinations made by a trial judge, which may be based on a person's demeanor, conduct, gestures, tone of voice, or facial expressions." *Cowans*, 87 Ohio St.3d at 84. We also recognize that "[a] trial court is not required to automatically accept expert opinions offered from the

witness stand * * *." *State v. White*, 118 Ohio St.3d 12, 2008-Ohio-1623, ¶ 71. "Nevertheless, expert opinion 'may not be arbitrarily ignored, and some reason must be objectively present for ignoring expert opinion testimony.'" (Emphasis omitted.) *Id.*, quoting *United States v. Hall*, 583 F.2d 1288, 1294 (5th Cir.1978). Because competency determinations are issues of fact rather than law, *see Roberts*, 137 Ohio St.3d 230, 2013-Ohio-4580, at ¶ 92, a court's factual findings are of paramount importance to a reviewing court. *See Cowans* at 84. A defendant is presumed competent as a matter of law, R.C. 2945.37(G), and cannot hope to overcome that presumption with evidence that he merely suffers from mental instability, requires psychotropic medication, or refuses to cooperate with his counsel. *See State v. Ferguson*, 108 Ohio St.3d 451, 2006-Ohio-1502, ¶ 46; *State v. Bock*, 28 Ohio St.3d 108, 110 (1986); *State v. Johnson*, 9th Dist. Summit No. 25620, 2011-Ohio-6417, ¶ 19. In cases such as this one, where competing experts are sharply-divided, a reviewing court cannot conduct a meaningful review in the absence of the factual findings and credibility determinations that led to the lower court's competency ruling. *See Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, at ¶ 46 (competency determination will stand so long as there exists some reliable and credible evidence *to support the court's findings*).

{¶17} Because the trial court failed to make any factual findings or credibility determinations, we cannot properly review its ruling. *See id. See also State v. Purefoy*, 9th Dist. Summit No. 27992, 2017-Ohio-79, ¶ 18 ("When the trial court fails to make adequate factual findings, this Court cannot determine the extent to which the facts in the record were considered by the trial court."). For that reason, we must conclude that the court erred when it found that Stutzman remains incompetent. In so concluding, this Court takes no position on the ultimate question of Stutzman's competence to stand trial. The State's assignment of error is sustained to

the extent that the court failed to make factual findings, and the matter is remanded for it to make factual findings in the first instance. *See Purefoy* at ¶ 18.

III.

**{¶18}** The State's sole assignment of error is sustained for the reasons outlined in the foregoing opinion. The judgment of the Wayne County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment reversed,<br>and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

TEODOSIO, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

DANIEL R. LUTZ, Prosecuting Attorney, and JOHN M. WILLIAMS, Assistant Prosecuting Attorney, for Appellant.

DAVID L. DOUGHTEN, Attorney at Law, for Appellee.

JOHN J. LEONARD, Assistant Public Defender, for Appellee.