[Cite as *State v. Stutzman*, 2021-Ohio-995.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

STATE OF OHIO

    Appellant

v.

RODNEY R. STUTZMAN

    Appellee

C.A. No.     19AP0050

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.     11-CR-0022

DECISION AND JOURNAL ENTRY

Dated: March 29, 2021

HENSAL, Judge.

{¶1}    The State of Ohio appeals from the judgment of the Wayne County Court of Common Pleas, finding Rodney Stutzman incompetent to stand trial. This Court affirms.

I.

{¶2}    This appeal follows this Court's prior remand of the matter for the trial court to make factual findings in support of its decision that Mr. Stutzman is incompetent to stand trial. *See State v. Stutzman*, 9th Dist. Wayne No. 18AP0038, 2019-Ohio-1695, ¶ 17. In the prior appeal, this Court set forth the factual and procedural background as follows:

> In January 2011, the police conducted a welfare check at the home of Stutzman's parents because another family member had been unable to reach them for several days. The officer who responded to their home found a note on their door that read: "Going on a trip out west for three months. See ya all when we get back." He also spotted a broken basement window. Once he entered the home, he looked in the basement and discovered the parents' bodies. Both the parents had sustained gunshot wounds to the head, and the husband had been decapitated.
>
> Several days later, the police apprehended Stutzman in West Virginia. He was driving his father's truck and had in his possession his father's driver's license, his

mother's health insurance card, multiple credit cards belonging to his parents, and a check for $5,000, drawn on their account and made payable to him. Inside the truck, the police found a pair of bloodied jeans and shoes. Subsequent DNA testing confirmed that the blood belonged to his parents. Additionally, handwriting experts matched samples of Stutzman's handwriting to the handwritten note left on his parents' door.

As a result of the foregoing events, Stutzman was indicted on two counts of capital murder and other serious offenses. He was appointed counsel, and his counsel soon raised with the court the question of Stutzman's competence. The defense retained Dr. Galit Askenazi, a board certified forensic psychologist and clinical neuropsychologist, to evaluate Stutzman and submit her report to the court. Upon its review of that report, the court determined that Stutzman was incompetent to stand trial, but restorable. As such, it committed him to the care of the Timothy B. Moritz Forensic Unit of Twin Valley Behavioral Healthcare ("Twin Valley") and ordered him to undergo competency restoration treatment.

Within six months of Stutzman's admission to Twin Valley, Dr. Bob Stinson, a board certified forensic psychologist, reported that Stutzman did not suffer from any mental illness and that his purported symptoms were the result of malingering. The court scheduled the matter for a competency review hearing, and Stutzman was transferred to the jail for his upcoming hearing. Multiple continuances then ensued, however, and resulted in Stutzman remaining at the jail for more than fourteen months. During that time, Dr. Askenazi reevaluated him and submitted an updated report. Consistent with her report, she testified at the competency review hearing that Stutzman remained incompetent. Meanwhile, the State called Dr. Delaney Smith, a board certified forensic psychiatrist who had treated Stutzman at Twin Valley. Dr. Smith did not offer an opinion on the ultimate issue of Stutzman's competence, but testified that his behavior was consistent with malingering rather than any type of psychosis or major mental illness. Faced with the testimony of competing experts, the court found Dr. Askenazi's opinion more credible than Dr. Smith's. As such, it found Stutzman incompetent to stand trial.

Due to the expiration of the statutory time period for competency restoration, the court held additional proceedings to determine whether it would retain jurisdiction over Stutzman. The court ultimately concluded that Stutzman was a mentally ill person subject to hospitalization by court order, so it issued an order retaining jurisdiction over him. Pursuant to that determination, the court once again committed Stutzman to the care of Twin Valley.

The court scheduled another competency review hearing the following year, by which point in time Stutzman had met with several additional mental health professionals. The State presented an annual comprehensive report from Dr. Smith, as well as her testimony, and the testimony of Dr. Dennis Eshbaugh, a forensic psychologist who had evaluated Stutzman for competency at the behest of the State. Both opined that Stutzman was malingering and did not have a serious mental

illness. Dr. Askenazi, however, presented a contrary opinion on behalf of the defense, having completed an updated report. Once again faced with the testimony of competing experts, the trial court placed greater weight on Dr. Askenazi's opinion and found that Stutzman remained incompetent.

Almost two years later, Dr. John Tilley, a board certified forensic psychologist, issued a status report regarding Stutzman's competence. Dr. Tilley reported that Stutzman had not manifested any genuine indications of a serious mental illness, was likely malingering, and was likely competent to stand trial. In light of his report, the court scheduled another competency review hearing. The hearing was ultimately postponed for over a year, however, due to various continuances and the need for further discovery. During that time, Dr. Askenazi issued another report, Dr. Tilley issued a second status report and an amended report, and Dr. Askenazi issued a supplemental report. When the hearing finally occurred, the State presented the testimony of (1) Dr. Tilley; (2) Dr. Smith; (3) Dr. David Soehner, a board certified forensic psychiatrist who had acted as Stutzman's attending psychiatrist at multiple points; (4) a licensed social worker who had interacted with Stutzman throughout the duration of his two stays at Twin Valley; and (5) a registered nurse who also had interacted extensively with Stutzman during his stays. Each of the State's five witnesses testified that Stutzman was malingering. Meanwhile, Dr. Askenazi, testifying as the only witness for the defense, maintained that Stutzman remained incompetent. Following the hearing, the court determined that Stutzman would continue his commitment at Twin Valley, as he remained incompetent to stand trial.

*Id.* at ¶ 2-8.

{¶3} The State appealed the trial court's competency determination to this Court. *Id.* at ¶ 9. This Court, however, determined that it was unable to review the merits of the appeal because the trial court failed to convey its factual findings or credibility determinations on the record or in its journal entry. *Id.* at ¶ 14. We, therefore, remanded the matter for the trial court to make factual findings in the first instance. *Id.* at ¶ 17.

{¶4} On remand, the trial court issued a new journal entry, stating – in part – that:

[t]his court has reviewed the evidence, the testimony of the witnesses and the arguments of counsel. The court's opinion that defendant is not competent to stand trial has not been altered, although defendant's condition seems to have improved with the administration of medication. (The court would note that initially the doctors at Twin Valley did not believe defendant required medications for his psychosis because he was malingering.) * * * [T]his court finds Dr. Askenazi to be credible, her testimony to be convincing and compelling. Dr. Askenazi is an expert

in the field of malingering and has trained others in the field. She is Board Certified in Neuropsychology and Forensic Psychology, one of only eight individuals in the country. She has determined through objective testing and her observations of the defendant in and out of the presence of his attorneys, that defendant is not competent to stand trial because he is unable to assist his counsel in his defense. While the State presented numerous witnesses, Dr. Tilley was the only state witness who administered objective testing to defendant. Dr. Askenazi and Dr. Tilley interpreted the results differently. The other witnesses discussed their observations of defendant, which tend to be discounted in the profession without objective testing. Additionally, none of those witnesses observed defendant with his legal counsel.

Based upon the opinion of Dr. Askenazi, her expertise and qualifications, her interpretations of objective testing, her observations of defendant, defendant's history of mental health issues prior to the murder of his parents, his biological mother's history of schizophrenia and his improvement while on antipsychotic medication, this court determines defendant remains incompetent to stand trial as defendant is a mentally ill person subject to hospitalization and incapable of assisting his counsel in his own defense.

{¶5} The State has appealed the trial court's decision, raising one assignment of error for this Court's review.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN FINDING THAT MR. STUTZMAN REMAINED INCOMPETENT TO STAND TRIAL WHEN THE STATE PRESENTED OVERWHELMING EVIDENCE OF HIS COMPETENCE.

{¶6} In its sole assignment of error, the State argues that the trial court abused its discretion by finding Mr. Stutzman incompetent to stand trial. This Court disagrees.

{¶7} Competency determinations are reviewed for an abuse of discretion. *See State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, ¶ 53 (noting the abuse-of-discretion standard). As this Court has previously stated,

[c]riminal defendants are presumed competent to stand trial. R.C. 2945.37(G). "[T]he burden is on the defendant to prove by a preponderance of the evidence that he is not competent." *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, ¶ 45.

The question is "'whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" *State v. Berry*, 72 Ohio St.3d 354, 359 (1995), quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960). "One who lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not stand trial." *State v. Smith*, 9th Dist. Summit No. 27389, 2015-Ohio-2842, ¶ 9, citing *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 155. *Accord* R.C. 2945.401(J)(2)(a).

"A criminal defendant's competency to stand trial * * * is a question of fact." *State v. Roberts*, 137 Ohio St.3d 230, 2013-Ohio-4580, ¶ 92. Deference, therefore, generally ought to be afforded to a trial court's competency determination, as "factual determinations are best left to those who see and hear what goes on in the courtroom." *State v. Cowans*, 87 Ohio St.3d 68, 84 (1999). *Accord State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, ¶ 59 ("As with other witnesses, the trial judge heard all of the expert testimony, and it was his job to judge their credibility and weigh all the evidence in making his findings."). A trial court's competency findings "will not be disturbed when there is some reliable and credible evidence supporting those findings." *Were* at ¶ 46.

(Alterations sic.) *Stutzman* at ¶ 12-13.

{¶8} As occurred in this case, when a trial court is presented with competing expert testimony, it is "entitled to use its broad discretion in weighing the credibility of the experts and assigning value to their testimony." *Zeidman v. Zeidman*, 10th Dist. Franklin No. 15AP-783, 2016-Ohio-4767, ¶ 25; *State v. Michel*, 9th Dist. Summit No. 25184, 2011-Ohio-2015, ¶ 32 (addressing competing expert testimony and noting that the finder of fact is in the best position to assess the weight and credibility of that evidence). "[C]redibility determinations * * * will not be disturbed if supported by some competent and credible evidence." *State v. Dovala*, 9th Dist. Lorain No. 13CA010440, 2014-Ohio-2331, ¶ 15, fn. 1.

{¶9} The State argues that the trial court abused its discretion by finding Mr. Stutzman incompetent to stand trial despite the presentation of overwhelming evidence to the contrary. Simply put, the State argues that the trial court abused its discretion by relying on Dr. Askenazi's testimony, as opposed to the testimony of the State's several witnesses who all testified that Mr.

Stutzman is malingering. The State presents three primary sub-arguments in support of its position, which we will address in turn.

{¶10} First, the State argues that the trial court abused its discretion by placing greater weight on the testimony of Dr. Askenazi, who is not authorized to prescribe medications, than on the testimony of Dr. Smith and Dr. Soehner, who are authorized to prescribe medications, with respect to the purpose and effect of the medications that Mr. Stutzman was taking. In support of this argument, the State points to Dr. Askenazi's testimony from a prior competency hearing wherein she initially testified that Mr. Stutzman's symptoms had improved with the daily administration of Haldol, an antipsychotic medication, but later acknowledged that he had only received that medication a few times. The State then points to the testimony of Dr. Soehner and Dr. Smith from the 2018 competency hearing, both of whom testified that Mr. Stutzman was prescribed low dosages of Seroquel, an antipsychotic, and Effexor, an antidepressant, but that those medications were not used as antipsychotics. Rather, they testified that those medications were used for other purposes, such as to help minimize Mr. Stutzman's irritability and anger. The State, therefore, challenges the trial court's reliance on Dr. Askenazi's testimony that Mr. Stutzman's condition improved with antipsychotic medications, concluding that the trial court abused its discretion by not placing greater reliance on the testimony of Dr. Smith and Dr. Soehner.

{¶11} Second, the State argues that the trial court abused its discretion by favoring the conclusions of Dr. Askenazi over those of Dr. Tilley with respect to the objective malingering testing that each of them performed. As previously noted, the trial court determined that Dr. Askenazi and Dr. Tilley were the only witnesses who had administered objective testing, and that they had interpreted the results of that testing differently. The State argues that it was an abuse of discretion to place more weight on Dr. Askenazi's interpretation of those results because Dr.

Askenazi's analysis was substantially more subjective. To that end, the State points to Dr. Askenazi's testimony indicating that, while her administration of the Structured Interview of Reported Symptoms ("SIRS") test (an objective test used for determining whether a patient is malingering) in 2011 produced results consistent with malingering, she invalidated those results on the basis that Mr. Stutzman was actively psychotic at the time of the testing. Dr. Askenazi testified that she did so because the SIRS manual cautions against administering the test to a patient who is actively psychotic.

{¶12} Dr. Tilley, however, testified that Dr. Askenazi misspoke, and that the SIRS manual cautions against administering the test to a patient who is grossly psychotic, which is different from being actively psychotic. Dr. Tilley explained that a person who is actively psychotic has active symptoms of psychosis such as hallucinations or delusions. He further explained that someone who is grossly psychotic is so disorganized that they are incoherent, incapable of maintaining any semblance of a normal conversation, or, perhaps, catatonic. The State concludes that Dr. Askenazi and Dr. Tilley's conclusions on the objective testing were not merely a difference of interpretation, and that Dr. Askenazi made a subjective decision to invalidate the results of the objective testing using the incorrect standard (i.e., actively psychotic as opposed to grossly psychotic).

{¶13} Third, the State argues that the trial court abused its discretion when it relied upon Mr. Stutzman's biological mother's history of schizophrenia to support its decision that Mr. Stutzman is incompetent. The State argues that Dr. Askenazi did not testify regarding Mr. Stutzman's biological mother's history of schizophrenia at the April 2018 hearing. The State acknowledges, however, that Dr. Askenazi did testify at a prior hearing that Mr. Stutzman's biological mother suffered from chronic schizophrenia, and that there was a 50% chance that her

children could be schizophrenic. The State notes that, during its cross examination of Dr. Tilley at the 2018 hearing, defense counsel did question Dr. Tilley about Mr. Stutzman's biological mother's history of schizophrenia, and the likelihood that Mr. Stutzman would have inherited that condition from her. Dr. Tilley was not aware of Mr. Stutzman's biological mother's medical history, but acknowledged that there is a genetic component to schizophrenia. He testified that the likelihood of Mr. Stutzman inheriting schizophrenia from his biological mother was between 10% and 25%. The State concludes that, if the trial court extensively relied upon the fact that Mr. Stutzman's biological mother was schizophrenic, the trial court abused its discretion by relying on statistical conclusions unsupported by scientific studies, or by favoring the testimony of Dr. Askenazi over that of Dr. Tilley without the support of clear scientific findings.

{¶14} Having reviewed the record, this Court concludes that "some reliable and credible evidence" supports the trial court's competency findings. *Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, at ¶ 46. Aside from the ultimate issue of Mr. Stutzman's competency, the central issue in this case – which bears heavily on the competency determination – is whether Mr. Stutzman is malingering symptoms of a severe mental illness. The trial court found Dr. Askenazi's testimony on this issue to be more credible than the State's witnesses. In doing so, the trial court primarily relied upon the objective testing Dr. Askenazi administered to Mr. Stutzman. This Court's review of the record, including Dr. Askenazi's testimony at the 2018 competency hearing, indicates that Dr. Askenazi not only administered the SIRS test, but also the Inventory of Knowledge ("ILK") test, which is a test for assessing malingering of incompetency, to Mr. Stutzman in 2014. She testified that the results of that test indicated that Mr. Stutzman gave a good effort, but that he may not be competent. At the 2014 competency hearing, Dr. Askenazi testified similarly, indicating that the ILK test is the gold standard for assessing potential feigning of lack of knowledge in

competency settings. At that hearing, she concluded that the results of the ILK test, in conjunction with the results of the 2011 SIRS test and Mr. Stutzman's medical records, indicated that Mr. Stutzman was not malingering.

**{¶15}** Regarding Dr. Tilley's administration of the SIRS test, Dr. Askenazi acknowledged that those results indicated probable malingering, but also testified that the results were consistent with Mr. Stutzman's history of over-endorsing his symptoms due to his suggestibility. Thus, while she did not disagree with the manner in which Dr. Tilley administered the SIRS test, she disagreed as to what those results reflected given Mr. Stutzman's history of symptoms. Further, regarding the State's argument that the SIRS manual cautions against administering the test to a grossly psychotic patient, as opposed to an actively psychotic patient, the record reflects that Dr. Askenazi did determine that Mr. Stutzman was grossly psychotic at the time she administered the SIRS test. For example, in Dr. Smith's Annual Comprehensive Psychiatric Exam dated August 11, 2014, Dr. Smith noted that Dr. Askenazi determined that the results of the SIRS testing should not be interpreted because Mr. Stutzman appeared grossly psychotic.

**{¶16}** While this Court is mindful of the State's argument that Dr. Askenazi subjectively invalidated the results of the SIRS test, the record reflects that she is an expert in the field of malingering, and that she relied upon more than the SIRS testing to reach her ultimate conclusion that Mr. Stutzman is not malingering, and that he is incompetent to stand trial. Further, even assuming, without deciding, that the trial court should have afforded more weight to the State's witnesses regarding the purpose and effect of Mr. Stutzman's medications, as well as his genetic predisposition to schizophrenia, the record still contains "some reliable and credible evidence" to support the trial court's competency findings. *Were* at ¶ 46.

{¶17} Under the abuse-of-discretion standard, this Court cannot substitute its judgment for that of the trial court. *Baire v. Bd. of Educ.*, 9th Dist. Lorain No. 99CA007293, 2000 WL 372324, *3 (Apr. 12, 2000), citing *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). Notwithstanding the evidence presented by the State, this Court cannot say that the trial court abused its discretion by determining that Mr. Stutzman remained incompetent to stand trial at the time it issued its judgment entry. In reaching this conclusion, we are mindful of the fact that competency concerns a "defendant's present mental condition," and that due in part to this appeal, it now has been over two years since the trial court held a competency hearing. R.C. 2945.37(G). While Mr. Stutzman's mental condition may have improved or worsened in the interim, our decision is limited to the order appealed from, the arguments made, the record that existed at the time of the appeal, and whether the trial court abused its discretion at that time. Therefore, we take no position regarding the competency of Mr. Stutzman to stand trial as of the issuance of this decision. The State's assignment of error is overruled.

III.

{¶18} The State's assignment of error is overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, J.
CONCURRING.

{¶19} While I am troubled by certain aspects of the trial court's decision, in light of the standard of review, I am compelled to concur in the lead opinion.

{¶20} Here, the trial court acknowledged the importance of objective testing and, in relying on Dr. Askenazi's opinion, cited to the fact that she had performed such testing. While both Dr. Askenazi and Dr. Tilley did conduct objective testing, only Dr. Tilley had recently done so. This is important because the purpose of the hearing was to evaluate Stutzman's *present* status. *See* R.C. 2945.401(J)(2)(a) (noting that the trial court is to determine whether "the defendant presently is capable of understanding the nature and objective of the proceedings against the defendant and of assisting in the defendant's defense"). Thus, the trial court's reliance on the opinion of an expert who had not recently performed objective testing gives me pause. At some point this testing becomes stale and unreliable.

{¶21}   Moreover, I am troubled by the trial court's reliance on Dr. Askenazi's testimony as to Stutzman's improvement on antipsychotic medication since as a forensic psychologist she was not qualified to opine on medication treatment and its effects.   This is especially relevant considering Stutzman's treating psychiatrist, Dr. Soehner, testified that the medication was not prescribed in a manner to act as an antipsychotic but to lessen effects, such as anger and irritability, of his personality disorders.   Given the importance of evaluating the present status of Stutzman, it is also concerning that the trial court appeared to heavily rely on factors rooted in Stutzman's past, such as his mental health history and his mother's history of schizophrenia, as rationale to conclude that Stutzman was not competent at the time of the hearing.   Nonetheless, given the deferential standard of review and credibility determinations made by the trial court, I must concur in the lead opinion's decision to affirm the trial court's judgment.

CALLAHAN, P. J.
DISSENTING.

{¶22}   The standard of review that this Court must apply in this case requires us to weigh the evidence to determine whether the trial court's decision is supported by evidence that is both competent and credible.  Measured by that standard, the trial court erred, and I respectfully dissent.

{¶23}   When determining whether a defendant is competent to stand trial, a trial court must consider whether the defendant '"has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him."'  *State v. Berry*, 72 Ohio St.3d 354, 359 (1995), quoting *Dusky v. United States*, 362 U.S. 402 (1960).  The burden of proof regarding incompetency by a preponderance of the evidence falls to the defendant, who is presumed competent to stand trial.  *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, ¶ 45.

{¶24} On appeal, "[a] trial court's finding that a defendant is competent to stand trial will not be disturbed when there is some reliable and credible evidence supporting those findings." *Id.* at ¶ 46. This standard requires us to defer to the trial court's factual determinations to the extent that they are based upon the trial court's ability to observe witness testimony in person, with attention to "demeanor, conduct, gestures, tone of voice, or facial expressions." *State v. Cowans*, 87 Ohio St.3d 68, 84 (1999). *See also Were* at ¶ 46. It does not relieve this Court entirely of its responsibility to consider whether the trial court's decision is supported by evidence that is both "reliable and credible." *See id. Compare Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 15 (observing that the phrase "'some competent, credible evidence' * * * presupposes evidentiary weighing by an appellate court to determine whether the evidence *is* competent and credible."). The analysis that the Supreme Court of Ohio employs recognizes this fact. *See*, *e.g.*, *Were* at ¶ 49; *State v. Hicks*, 43 Ohio St.3d 72, 79 (1989).

{¶25} In other words, the standard of review this Court must apply in this case requires us to determine whether the trial court's determination is supported by competent, credible evidence and, in doing so, to consider the weight of the evidence without resolving inferences in favor of one side or the other. The trial court's decision falls short when measured by this standard. The trial court disregarded—entirely—the clinical observations made by the mental health professionals who are regularly in contact with Mr. Stutzman in the course of his treatment. Those professionals, who had decades of experience in the clinical treatment of mentally ill individuals, described their ongoing observations of Mr. Stutzman's behavior, the tendency of his behavior to wax and wane in conjunction with pending legal proceedings, and the inconsistency between his behavior and the behavior exhibited by individuals suffering from severe mental illness.

{¶26} The trial court purported to do so in deference to the objective measure of psychological testing but credited the testimony of the defense expert, who did not, in fact, perform such tests at any point in time close to the 2018 hearing. The trial court did so notwithstanding the rebuttal testimony that established that the defense expert testified incorrectly regarding her earlier administration of those tests to "actively psychotic" versus "grossly psychotic" individuals. In contrast, the trial court discounted the testimony of the State's expert, who *did* conduct objective testing in conjunction with the 2018 hearing and concluded that the results indicated that Mr. Stutzman was malingering.

{¶27} The trial court's decision also falls short with respect to its conclusion regarding Mr. Stutzman's drug regimen. Specifically, the trial court noted that Mr. Stutzman's condition "seems to have improved with the administration of medication." In doing so, the trial court appears to have relied on the testimony of the defense expert, a psychologist who cannot prescribe medication. At the same time, the trial court appears to have disregarded the testimony of one of Mr. Stutzman's treating psychiatrists, who testified that Mr. Stutzman was prescribed medications in a dose appropriate for sleep regulation and management of personality disorders, but inconsistent with treatment of psychotic disorders. The evidence summarized above is a small, but significant, representation of the errors made in this case. Under these circumstances, this Court should reverse the trial court's decision that Mr. Stutzman was incompetent to stand trial as of the date at issue in this appeal. I respectfully dissent.

APPEARANCES:

DANIEL R. LUTZ, Prosecuting Attorney, and JOHN M. WILLIAMS, Assistant Prosecuting Attorney, for Appellant.

DAVID DOUGHTEN, Attorney at Law, for Appellee.

JOHN LEONARD, Assistant Public Defender, for Appellee.